Albert Raymond **RANDOLPH**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 46978.

Court of Criminal Appeals of Texas.

Feb. 27, 1974.

William E. Nicholas, Sinton and Joe J. Alsup, Corpus Christi, for appellant.

Jim D. Vollers, State's Atty., Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION
## ON APPELLANT'S MOTION
## FOR REHEARING

ROBERTS, Judge.

The appellant was convicted of burglary. The jury assessed his punishment at two years' imprisonment.

All of appellant's grounds of error relate to the sufficiency of the evidence. Viewed in light of the jury's verdict, the evidence shows the following: W. L. Shelburne testified that on June 26, 1970, he and his "hands" placed their saddles in a shed at the farm where the offense occurred. The door to the shed was closed. He returned on the following morning to find that the door to the shed had been pushed open and the saddles were missing. C. B. Owen, a deputy sheriff of San Patricio County, testified that he examined the shed and that the door appeared to have been pried open. Both Shelburne and Owen tes-

tified that another building on the same farm had been entered and a number of tools had been taken therefrom.

Shelburne testified that "almost a year" after the offense the appellant visited at his home, told him that he had possession of the saddles, that he had pawned them, that he wanted to know how much Shelburne had lost (". . . what it would take to kind of offset my loss . . ."), and that he wanted to work with Shelburne ". . . in any way possible to try to clear the air . . . ."

The State also showed, by the testimony of a clerk at the Olympia Pawn Shop in San Antonio, that on February 1, 1971 (some eight months after the offense), the appellant and his brother, Pat, appeared at the pawn shop with the saddles. At this time Pat apparently attempted to pawn the saddles; however, he was unable to produce his identification, so appellant pawned them. The State also showed, and this fact was developed on cross-examination, that the same saddles had previously been pawned and redeemed at the same shop by Pat alone.

It was also shown that one of the saddles carried a silver plate on which was engraved the name "Pat" and that this plate had been used to hide the name "Mike" (a deceased son of Mr. Shelburne) which had been tooled in the leather of the saddle.

The only other evidence of guilt was some rather ambiguous evidence of flight. Arturo Rodriguez, a Texas Ranger, testified that on February 24, 1971, he had two warrants for appellant's arrest. Rodriguez stationed himself in front of the Olympia Pawn Shop. The shop had just closed and the manager was driving away when Rodriguez observed the appellant and another drive up in a pick-up truck. The driver was a man named Vincent Clark. The Ranger testified that the men did not

stop but continued down the street. He turned around to follow them and observed them make a u-turn and come back toward him. The Ranger made a u-turn, and followed them, observing them speed up and make two turns at intersections before he caught and stopped the truck. There was no testimony that the Ranger ever used a siren or red lights in order to call attention, including that of the occupants of the truck, to the fact that he was giving chase. Compare Talbert v. State, and Navy v. State, 489 S.W.2d 309 (Tex. Cr.App.1973).

We must assume, from this evidence, that the State relied upon recent unexplained possession to show appellant's guilt.[1] In order to warrant the drawing of an inference of guilt from the mere circumstance of possession, such possession must be personal, recent, unexplained, and must involve a distinct and conscious assertion of property rights by the accused. See Smith v. State, 472 S.W.2d 121 (Tex.Cr. App.1971) and cases there cited.

 In the case at bar, appellant's possession was not shown to be personal. The record shows that appellant's brother, Pat, apparently acting alone, had previously pawned and redeemed the saddles. Additionally, one of the saddles was marked with Pat's name. Appellant's statement to Shelburne was made after the saddles were pawned a second time and were unredeemed, so that appellant, while admittedly knowing their location, did not have possession of them. The fact that appellant entered the pawn shop with his brother on February 1, and pawned the saddles in his name when his brother could not produce identification, has little probative value, in view of the fact that his brother had previously pawned and redeemed the saddles and had his name on one of them. We are of the opinion that this is not sufficient evidence to show that the appellant and his brother were acting together and exercising joint

---

1. We have not been favored with a brief for the State either on original submission or on this rehearing.

control and possession of the property. Compare Beard v. State, 458 S.W.2d 85 (Tex.Cr.App.1970).

Appellant's "possession" was certainly not recent, since the saddles were pawned some eight months after the offense, and appellant's conversation with Shelburne occurred even later.

Appellant's possession was unexplained. He did not testify at trial and his conversation with Shelburne shed no light on the pawning of the saddles.

With regard to a distinct and conscious exercise of property rights in the saddles, the evidence shows at most that appellant pawned them in his name only after his brother was unable to do so.

■ A conviction on circumstantial evidence cannot be sustained if the circumstances proved do not exclude every other reasonable hypothesis except that of the guilt of the accused. Proof amounting only to a strong suspicion or a mere probability of guilt is insufficient. See Flores v. State, 489 S.W.2d 901 (Tex.Cr.App.1973) and cases there cited.

We are of the opinion that the evidence in this case was not such as to exclude every reasonable hypothesis other than that the appellant committed this offense.

For the reasons stated, the judgment of affirmance is set aside, appellant's motion for rehearing is granted and the judgment is reversed and the cause remanded.

MORRISON, Judge (dissenting).

I dissent to a reversal of this conviction. The majority holds that the evidence is insufficient to connect the appellant with the burglary. The record reflects the following incriminating facts:

A) Appellant, accompanied by his brother, Pat, some seven plus months after the burglary possessed (pawned) two saddles stolen during the burglary.[1]

B) At the time the appellant possessed (pawned) these saddles, there was a silver plate "nailed" on the back of one of these saddles marked with the name Pat, underneath which was the name Mike tooled into the leather. There had been an attempt to cut off the name Mike with a knife.[2]

---

1. The majority opinion contains the following statement: "The State also showed, by the testimony of a clerk at the Olympia Pawn Shop in San Antonio, that on February 1, 1971 (some eight months after the offense), the appellant and his brother Pat appeared at the pawn shop with the saddles. At this time Pat apparently attempted to pawn the saddles; however, he was unable to produce his identification, so appellant pawned them."

The pawn shop owner's testimony indicates that appellant had more control over the property than simply being an agent of delivery for Pat.

Mr. Noe C. Morin, the pawn shop owner's testimony:

"Q Do you know this defendant here, Albert Raymond Randolph?
A Yes sir.
Q And did you see him during the month of February 1971?
A Yes, sir.
 * * * * *
Q What was the occasion for you having seen him, sir?
A He was a customer at the store.
Q At the Oylmpia Pawn Shop?

A Yes, sir.
 * * * * *
Q Did he [appellant] ever bring in any saddles, did he ever bring any saddles in?
A Yes, sir, two saddles, and some shotguns, sir.
Q When did he bring those saddles in?
A On the first of (sic) the second, February.
Q On the first of February?
A Yes, sir.
Q That was in 1971?
A Yes, sir."

2. Although there is no direct evidence that the appellant participated in the alterations, the evidence is clear that the alterations were on the saddle at the time appellant possessed (pawned) the saddles.

Mr. Noe C. Morin, the pawn shop owner's testimony, continuing at a later point in his testimony from that quoted in footnote (1) hereinabove:

"Q Incidentally, on one of these saddles do you recall there being some kind of a silver plate on the back of it?

These alterations of identity were made sometime after the burglary.[3]

C) Three and a half weeks later, appellant, not having redeemed the saddles, was the passenger in a pickup truck which fled away *from this same pawn shop* and from a Texas Ranger. The majority discusses this evidence, but apparently disregards it. I feel, however, that it constitutes flight, showing guilt of this burglary.[4]

A Yes, sir.
Q Was there anything engraved on the silver plate?
A Yes, sir.
Q What was that?
A Pat, P-A-T.
Q P-A-T was engraved on that silver plate on the back of that saddle?
A Yes, sir.
Q And Pat was the name of Albert Randolph's brother?
A Yes, sir.
Q And this was in February of 1971?
A Yes, sir, the two saddles were, the other items were before that."

Testimony of Mr. Glenn Krueger, Texas Ranger, with the Department of Public Safety:

"Q Mr. Krueger, were you looking for stolen property?
A Yes, sir.
Q Did you see two saddles there?
A Yes, sir, I did.
Q Did you subsequently find or have a report of two stolen saddles from down here in San Patricio County?
A Yes, sir.
Q Did you bring those saddles from the Oylmpia Pawn Shop back up here?
A Not on that same day.
Q But you did?
A Yes, sir.
Q Were these the same two saddles that we are talking about?
A Yes, sir.
Q Where did you take them?
A Turned them over to a Deputy Sheriff, Charlie B. Owen here in Sinton.
Q Would you describe these saddles to the jury?
A One of these saddles was a Vela made saddle which means that it was made in Floresville and it was a tooled saddle and on the cantle of the saddle there was a silver plate with the name Pat, P-a-t, written on that plate, but under this plate was the name Mike, M-i-k-e which was 'tolled' into that cantle.
Q Was that tooled into the leather?
A Into the leather, this name was hidden under the silver plate, the name Mike underneath, and on the silver plate was the name Pat, the other saddle was also a tooled brown leather saddle and on several different places on the saddle it had words tooled into the leather, said "Pole Bending Champion."
Q You delivered the saddles to Mr. C. B. Owen the Deputy Sheriff?
A On the 25th day of February.
Q On the 25th of February?
A Yes, sir.
Q What day was it that you found them?
A It was the 19th of February.
Q That's the same year, 1971?
A Yes, sir."

3. Testimony of Mr. W. L. Shelburne, Jr., the injured party:

"Q How do you know these saddles?
A Well, one of them was a pole bending championship for 1966 was won by some contestants from our local area at a McAllen Rodeo. Most people never realize, the only thing—they came from McAllen, it's a—the Rio Grande Valley Rodeo Association put on this rodeo and the other one belonged to my dead son and his name was on the back of it, it was a special made saddle.
Q And that belonged to your son who had previously passed away, is that correct?
A Yes, sir.
Q And it was then your property?
A Yes, sir, this was one of the saddles, on this particular saddle the name had been attempted to be cut off with a knife and it was so engraved that they couldn't get it off and then they drilled holes and put a silver plate over the top of the name, and this was pretty sentimental to us."

4. The Ranger's testimony is as follows:

"A I was waiting for him there in front of the pawn shop when I saw him and another subject drive up in a pickup, *as they saw me they went ahead and drove off going west on Military Drive*, I went ahead and turned around and by this time when I could come up to them they had already made a U turn up there at the next intersection and were coming back and I went ahead and jumped the curb and gave chase and by this time they apparently realized who I was—
MR. NICHOLAS (Appellant's Attorney): I object to the statement as to what they may have realized.

D) About a year after the burglary the appellant admitted to the injured party that he had had possession of these saddles.

E) Appellant asked the injured party if there was anything they (he and the injured party) could do "to help clear the air of the whole situation." The appellant wanted to know "about what it would take to kind of offset the loss."

F) Appellant's wife testified that appellant was a carpenter and a mechanic, did not ride horses, and would have no reason to have a saddle.

G) Appellant never mentioned to the injured party the name of his brother, Pat, or that he had gotten the saddles from his brother. Appellant did not give any explanation for his possession of the saddles when he talked to the injured party.

The majority assumes that the State relied upon recent unexplained possession to show appellant's guilt and then proceeds to show that three of the four elements of such proof are lacking, the only element proved being that the possession was unexplained. The majority's position overlooks (1) evidence which satisfies three, not just one, of the four elements of recent possession and (2) evidence, other than possession, which connects the appellant to this burglary.

The pawn shop owner's testimony that the appellant pawned the saddles and the injured party's testimony that the appellant admitted that he had had possession of these saddles is sufficient to show that the appellant's possession was (1) personal and (2) constituted a distinct and conscious assertion of property rights. The evidence as acknowledged by the majority is clear that appellant's possession was (3) unex-

plained. The only element lacking in proof is that the possession was (4) recent. Three of the four elements of recent possession having been proved, there are incriminating facts other than possession to connect appellant with this burglary, to-wit:

A) Flight.

B) Appellant's incriminating conversation with the injured party.

C) The appellant had no reason, business, personal or otherwise, to possess a saddle (coupled with the evidence that appellant possessed the saddles).

D) The alteration and concealment of identity on one of the saddles (coupled with appellant's possession of this saddle at a time when such alterations were thereon [5]).

In Law v. State, 73 Tex.Cr.R. 5, 163 S. W. 90, in refusing to recognize appellant's requested charge on recent possession, this Court held the following:

"In this case the state does not rely upon that circumstance alone (possession), but shows that the animal is recently branded in appellant's brand, and the first time he seeks to make an explanation of his possession, he does not deny possession, does not deny that he claimed the animal, but says he wants to go and see it, and see if he could tell from whom he got it, thus admitting his possession, his claim of ownership, only claiming that he had purchased it from someone. So the authorities cited by appellant where the state relied upon recent possession alone, unexplained, to show guilt, are not in point. If recent

THE COURT: Just tell what happened, officer.

A They sped up and I did too and they turned, they made a left turn there at one intersection, and they made another

right and by that time I caught up to them."

5. See Footnote (2), supra.

possession was the only circumstance in the case to show appellant's guilt, then the cases cited would support appellant's contention."

See also Walden v. State, 165 Tex.Cr.R. 196, 305 S.W.2d 354, and Bouchillon v. State, 160 Tex.Cr.R. 79, 267 S.W.2d 554.

The conviction then does not rely on possession alone, but the additional incriminating facts along with the evidence of possession are sufficient to sustain this conviction.

The conviction can also be sustained on the theory that appellant and Pat together committed the burglary. In Banks v. State, 160 Tex.Cr.R. 418, 271 S.W.2d 661, we held that the conviction did not depend upon the defendant's possession of the stolen property, but rather upon a co-principal's possession and defendant's connection with the co-principal. The conviction in the case at bar is likewise supportable on a theory of principals, particularly appellant's connection with his brother, Pat, and Pat's connection with the property stolen.[6]

In Grego v. State, Tex.Cr.App., 456 S.W.2d 123, it was held that the charge on circumstantial evidence need not include the provision that the defendant *and no other person* committed the offense charged when the evidence showed that the defendant participated with others in the commission of the crime. In the case at bar, there is sufficient circumstantial evidence that the appellant participated in the burglary either with or without Pat.

The evidence considered in its entirety is sufficient to support the jury's verdict. I would overrule appellant's motion for rehearing.

DOUGLAS, J., joins in this dissent.

6. There was no charge of principals in the case at bar as there was in Banks v. State, supra. Such a charge would not be necessary, however, in order to uphold a conviction based on the theory that appellant participated along with Pat in the burglary.

The majority points out the testimony that Pat apparently acting alone had pawned and redeemed the saddles prior to appellant and Pat together having done so. The theory of appellant and Pat jointly committing the burglary would explain this exclusive possession by Pat.