Robert Palacios RODRIGUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 53237.

Court of Criminal Appeals of Texas.

April 27, 1977.

Bob C. Hunt, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Robert A. Moen, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of theft under the former Penal Code. The punishment, enhanced by a prior conviction, is imprisonment for 12 years.

The appellant urges that the evidence is insufficient to support his conviction. We agree; the judgment must be reversed.

A burglarious entry was made at the house of Larry Speegla while he was at work on December 31, 1973. Speegla reported stolen a wrist watch, a ring, two shirts, several pairs of slacks, a pair of shoes, and an AM-FM clock radio. Several days later he found missing from his house a file box in which he kept important papers.

An officer who made an investigation of the burglary said it appeared entry had been attempted at the front door with channel lock pliers. He observed marks which he believed had been made by such pliers. Entry was made through a door between the garage and the house.

On January 7, 1974, Officer J. B. Haney went to the apartment of Sophia Rodriguez to investigate a "found article call." Mrs. Rodriguez, the mother of the appellant, resided in the two bedroom apartment. The appellant was in the hospital at the time the officer visited the apartment. The officer found a file box on a shelf in the closet in a bedroom of the apartment. The lock on the file box had been broken; the box contained papers bearing Speegla's name. Mrs. Rodriguez did not know who brought the file box to the apartment. Officer Ha-

ney arrested the appellant on a street not far from his house on January 31, 1974.[1]

Mrs. Rodriguez testified that on January 7, 1974, she called the officers and gave them the right to search the apartment because she "didn't have anything to hide." She saw Officer Haney and Officer Contraras find a file box in the closet of a bedroom in which her son had lived with his girlfriend.

Mrs. Consuela Garcia, who lived across the street from the Speegla house, observed a blue car at Speegla's house at about 1:00 p.m. on December 31, 1973. She saw a man, the passenger, leave the car and walk down the driveway. She was unable to identify either of the two men and she did not see the automobile leave. The man that walked down the driveway appeared to be of Spanish descent, but she did not know whether the driver was of Spanish descent.

Francis Garcia, who lived two houses away from Sophia Rodriguez, the appellant's mother, knew the appellant and Jessie Scalese, who hung around the neighborhood. She had seen the two men together and had seen Scalese driving a small blue automobile. Either a few days before or a few days after Christmas, 1973, she had seen these men unloading men's clothes from a blue automobile and taking them into the apartment. About the first week in January, she observed two police officers at Mrs. Rodriguez's apartment, then the two police officers came to her door and inquired about Scalese. After the officers left she noticed Sophia Rodriguez moving clothing from the front house to her garage apartment.

The appellant offered the testimony of Linda Cerdillo, who testified she had been going with the appellant off and on for three years. She testified that on December 31, 1973, and the first part of January, 1974, she lived with the appellant in an apartment with his mother. Sometime between December 31, 1973, and January 7,

1974, Linda said she found a metal box between the church and a brick building which she took home and put in the closet. The box had already been opened, but it contained papers and she did not take anything from the box. She said the appellant did not put the box in the closet; he was not with her when she found it, and she said he did not know anything about the box. She said that the appellant's mother found and inquired about the box after the appellant had gone to the hospital. She told the appellant's mother that she, Linda Cerdillo, had found the box and placed it in the closet.

The State's proof is based on circumstantial evidence and the jury was so instructed. Since the facts of each case are unique, prior case law is only instructive and to be used as a guide in determining the sufficiency of the evidence in a particular case.

The State in its brief cites, quotes at length, and relies upon *Hawkins v. State,* 467 S.W.2d 465 (Tex.Cr.App.1971). In that case not only was the defendant found in possession of stolen property, but the defendant was identified by a witness who saw the defendant hiding near the burglarized premises and then saw him carrying a trumpet case and a hi-fi or a radio which looked like the property that was taken in the burglary. The witness saw the defendant place these items in an automobile and leave the scene of the burglary. The facts in *Hawkins* were obviously much stronger from the State's standpoint then they are in the present case.

In *Reed v. State,* 487 S.W.2d 78 (Tex.Cr. App.1972) cited and relied upon by the State, the evidence not only shows that a knife taken in a burglary was found in the defendant's room, but the evidence also shows that he was in possession of a pistol which was taken in the burglary and that the defendant asserted a right to the pistol and through the agency of another pawned the pistol. Here again the evidence from

---

1. At the time of his arrest the appellant had a pair of channel lock pliers in the waistband of his trousers. The trial court ruled that the State failed to show the arrest was lawful, therefore the Court would not permit the officer to testify before the jury that he had found the pliers in the appellant's waistband at the time of his arrest.

the State's standpoint was much stronger than in the present case.

The State also cites and relies upon *Lopez v. State,* 490 S.W.2d 565 (Tex.Cr.App.1973) and *Roach v. State,* 398 S.W.2d 560 (Tex.Cr. App.1966). Without reciting the facts of these cases in this opinion we observe that the facts were also much stronger from the State's standpoint than are the facts in this case.

An inference or a presumption of a defendant's guilt of a burglary or of a theft sufficient to sustain a conviction may arise from the appellant's possession of property stolen or taken in a recent burglary. However, in the prosecution for either a theft or a burglary, to warrant such an inference or presumption of guilt from the circumstances of possession alone, such possession must be personal, must be recent, must be unexplained, and must involve a distinct and conscious assertion of right to the property by the defendant. See 5 Branch's Ann. 2d ed., Sections 2537 and 2650. 10 Tex.Jur.2d 250, Burglary, Section 88; *Crain v. State,* 529 S.W.2d 774 (Tex.Cr.App.1975); *Randolph v. State,* 505 S.W.2d 845 (Tex.Cr.App. 1966); *Hayes v. State,* 464 S.W.2d 832 (Tex. Cr.App.1971); *McKnight v. State,* 399 S.W.2d 552 (Tex.Cr.App.1966); *Russell v. State,* 218 S.W. 1049 (Tex.Cr.App.1920); *Russell v. State,* 86 Tex.Cr.R. 580, 218 S.W. 1051 (1920).

Since the jury did not, we cannot give any weight to Miss Cerdillo's testimony. Nevertheless, it was while the appellant was in the hospital that the officers found the file box in a closet of the bedroom which the appellant had shared with another. This evidence alone is insufficient to show that the appellant had the personal possession and asserted a distinct and conscious right to the property. Under the cases cited, this conviction cannot be upheld.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.