Stephen Leroy McKIBBEN, Appellant,

v.

STATE of Texas, Appellee.

No. C14–83–225CR.

Court of Appeals of Texas, Houston (14th Dist.).

March 7, 1985.

**514**

Gerald Fry, Houston, for appellant.

J. Harvey Hudson, Houston, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

SEARS, Justice.

Appellant was convicted of burglary of a habitation under TEX.PENAL CODE ANN. § 30.02(a) (Vernon 1974). His punishment was enhanced by a previous felony conviction. He was sentenced to fifty years confinement and assessed a $10,-000.00 fine. In ground of error three, Appellant alleges that the evidence is insufficient to sustain his conviction. We agree.

On April 5, 1982, at approximately 1:30 a.m., Officer Downey, of the Village Police Department, saw a car parked in the back of an unlighted church parking lot. Since the engine was warm but nobody was in or around the car, he thought it was there under "suspicious" circumstances. Officer Downey called in the license number of the car and was advised that it was not a stolen vehicle. Still suspicious, the officer conducted a search of the vehicle using the aid of an artificial light. He found the vehicle filled with trash; he found two .22 caliber bullets on the floor and an eight-inch butcher knife in the glove compartment. He used a screwdriver found in the vehicle and opened the trunk of the car and found several other .22 caliber bullets. The officer at this time feared that unknown individuals might be hiding in the bushes watching his activity, so he entered his vehicle and left at a high rate of speed. He immediately circled the area, pulled into a back road to the church parking lot and set up surveillance on the automobile. Within a few seconds the automobile left at a high rate of speed and the officer followed. When the vehicle made a left turn without giving the proper signal, Officer Downey stopped the vehicle and questioned the driver and the Appellant, who was a passenger in the front seat. The driver, Edward Wayne Blacklock,[1] was arrested for driving without a license, and Appellant was arrested for public intoxication and unlawfully carrying a weapon. The butcher knife previously seen in the glove compartment had been removed and was found under the passenger's seat. Downey conducted an inventory search at the scene of the arrest and found no further evidence of any crime. He contacted a wrecker service and had the wrecker driver acknowledge an inventory form, and the car was then impounded.

The following day, Tuesday, April 6, Captain Frazier, also of the Village Police Department, investigated a burglary near the

---

1. Blacklock was convicted of aggravated robbery on September 17, 1982. This panel reversed his conviction and remanded for new trial. *See Blacklock v. State*, 681 S.W.2d 155 (Tex.App.—Houston [14th Dist.] 1984, pet. requested).

church. Since the address of the burglarized house was very near the location where Downey first observed the Blacklock car, Frazier drove to the storage yard on Wednesday, April 7, and conducted a search of the car. Frazier found a gold wedding band in a crease near the accelerator of the automobile, and in retrieving the ring, he discovered other items that had been shoved under the dashboard on the driver's side of the car. In retrieving those items he found confederate money, an antique wrist watch with no band, two old high school class rings and an elementary school class ring. Officer Frazier testified that the car appeared to have been lived in by one or more people, contained items of clothing, all sorts of trash, papers and twenty-five other itemized items in addition to the items found stuffed under the dashboard. Appellant was then charged with a two-count indictment of burglary and theft. At time of trial the theft portion of the indictment was waived and the state elected to go to trial solely on the burglary charge.

At time of trial, the testimony revealed that the owner and occupant of the burglarized house had been away for a period of two to three months visiting her daughter in Tennessee. Her niece, the next door neighbor, testified that on Tuesday, April 6, 1982, the yard man contacted her and told her the house had been broken into through a roll-out window. The niece went to the house, found it had been ransacked and called the police. The police officers testified that the house was completely ransacked, all the pictures and paintings had been removed from the walls, all the closets had been entered, searched and the doors left opened, all drawers had been searched, two television sets and a typewriter were sitting near an exit door, the entire kitchen area had been searched, ransacked and many silver items were laid out on the table. The officers inspected the house and all surrounding grounds, including the fence between the church and the burglarized premises. Nothing was found except a pair of gloves that appeared to be a woman's driving gloves and a small flashlight.

The niece and the complainant testified that the two high school class rings, the elementary school class ring, the wedding band, the antique watch and the confederate money belonged to complainant and were kept in the complainant's residence. Neither party could identify a gold chain and shark's tooth and a money clip, which had also been found with those items that were stuffed under the dashboard, as belonging to the complainant or coming from the complainant's house. It is interesting to note that the complainant and her niece testified that a twelve-piece setting of sterling silver flatware, containing approximately one hundred pieces of silver, was missing and unrecovered. They also testified that two five-inch silver candlesticks, a pair of binoculars and a pistol were missing and had not been recovered.

Perhaps the most damaging testimony to the state came when the state's witness, the niece, testified that she watched over the house for her aunt and had a maid come every Tuesday and a yard man every other Tuesday. She testified that she was in the house when the maid came the Tuesday prior to April 6 and everything was in order. She further testified on direct examination as follows:

Q: [W]hen was the last time before this Tuesday, ... April 6th, 1982—when was the last time you yourself were in that house?

A: April 5th, and then I walked around the house to see if any—everything was all right.

Q: Okay. Did you go into the house on April 5th?

A: Yes, I think I did.

Q: Okay, and previous to April 5th when was the last time you had been in the house?

The witness answered "two or three days earlier," but then changed her testimony to reflect that she had been there the previous Tuesday when the maid cleaned the house, and that everything was in order at that

time. The witness further testified on cross-examination as follows:

Q: Now, and you had looked at the house the day earlier?

A: Yeah, I walked around to see and everything.

Q: Was [sic] any of the windows broken?

A: Not at the time that I saw it in the afternoon approximately, oh, mid-afternoon.

Q: Okay. Would you say around 2:00 or 3:00 o'clock? ... And this would be on April 5th, a Monday?

A: Yeah.

Q: Okay. Now, when you went in the house nothing was out of order then either?

A: No.

At the close of the state's case, the defense moved for an instructed verdict on the basis that the Appellant was arrested at approximately 2:00 a.m. on Monday, April 5, 1982, and the complaining witness testified that she inspected the burglarized premises at 2:00 or 3:00 p.m. on that same day, some twelve hours after Appellant had been arrested, and at that time the windows were not broken and the house had not been burglarized. The court overruled the motion, the defense rested and the jury found Appellant guilty of burglary.

■ There are many strange elements to this case, and many unanswered questions. Both the gardener and the maid, who previously came to the home of the complainant at regular intervals, were unavailable at the time of trial. Of the items stolen in the break-in, the only items found in the vehicle in which Appellant was a passenger, were items having only sentimental value, and no monetary value. Those items that were stolen in the burglary that had any monetary value were not recovered. The automobile was searched in the church parking lot and again at the time Appellant was arrested, and none of the contraband was found at that time. However, one day after the burglary was reported, these items were allegedly found stuffed in the dashboard of the automobile. Further, Appellant was arrested at 2:00 a.m., and approximately twelve hours later the premises were inspected by the niece and were found to be in good order, the window was unbroken and the premises had not been burglarized. Although we may never find the answers to these questions, it is clear that the evidence presented by the state was insufficient to support a guilty verdict.

■ The state argues that Appellant's presence at the scene of the crime coupled with his joint possession of recently stolen property are circumstances tending to show guilt. We agree that when a defendant is found in possession of recently stolen property, and at the time of arrest fails to make a reasonable explanation showing his honest acquisition of the property, the fact finder may draw an *inference* of guilt. *See Hardesty v. State*, 656 S.W.2d 73 (Tex. Crim.App.1983) (en banc), for an excellent discussion of "inference vs. presumption." However, we must point out that this is merely a "permissible" inference. It is not sufficient for a conviction. The burden of proof is not shifted and the state must still prove each element of the crime beyond a reasonable doubt. *See* 19 TEX.JUR.3d *Criminal Law* § 1715 (1982). This inference or circumstance of guilt is not conclusive, and once this permissible inference arises, the sufficiency of the evidence must still be examined according to applicable direct or circumstantial evidence standards of Appellant's review. *Hardesty*, 656 S.W.2d at 77.

■ In this case, there is no proof that Appellant ever entered the burglarized premises, ever acted independently or jointly with co-defendant Blacklock in an attempt to commit a burglary, nor is there any other circumstantial evidence which would tend to connect him with the commission of this crime. The only evidence presented is that of recently stolen property found in the vehicle in which Appellant was a passenger, and Appellant's unexplained presence in a church parking lot near the burglarized premises. In order to

warrant such an inference or presumption of guilt from the circumstance of possession alone, such possession must be personal, recent, unexplained and must involve a distinct and conscious assertion of right to the property by the defendant. *Rodriguez v. State*, 549 S.W.2d 747 (Tex.Crim.App. 1977). There is no evidence that Appellant exercised personal or joint possession over the alleged stolen property, nor was there any distinct and conscious assertion of right to the property exercised by Appellant. The state has cited a series of cases that hold that evidence of a defendant's recent and unexplained possession of stolen property is sufficient in and of itself to sustain a conviction. A review of those cases indicates that the evidence was sufficient to sustain a conviction for the offense of theft but we find no case that holds the unexplained possession of stolen property alone is sufficient in and of itself to sustain a conviction for burglary. Further, in this case, the evidence presented by the state proved that the burglary occurred after the Appellant was incarcerated, and other testimony developed at trial showed that Appellant was never released on bond but was in fact in jail from the time of his arrest until the time of trial. Appellant's ground of error number three is sustained, and we therefore need not consider his other grounds of error.

■ Appellant has filed a pro se post-submission brief wherein he alleges fundamental error. While Appellant is not entitled to hybrid representation, this court can and will consider fundamental error at any time.

■ Appellant complains that the court, during voir dire and in the court's charge, instructed the jury that the enhanced punishment range was not less than fifteen years nor more than ninety-nine years or life, and a fine not to exceed $10,000. The jury, in addition to the prison term, assessed a $10,000 fine in this case.

In 1979, the legislature voted to amend the provisions of TEX.PENAL CODE ANN. § 12.32 (Vernon Supp.1985), to permit assessment of both fine and prison time for the commission of a first-degree felony offense. However, it failed to amend § 12.42(c), which provides the range of punishment for a person convicted of felony offense who thereafter commits a first-degree felony offense, and that punishment range does not provide for the assessment of a fine. The error is fundamental, the judgment is void and the cause must be reversed and remanded. *Bogany v. State*, 661 S.W.2d 957 (Tex.Crim.App. 1983) (en banc). Ground of error two in Appellant's pro se post-submission brief is hereby sustained.

The judgment of the trial court is reversed and this cause is remanded to the trial court with instructions to find Appellant not guilty.