IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-93-506-CR





WILLIAM R. KEEN, JR.,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 86,039, HONORABLE BOB JONES, JUDGE PRESIDING



 




 This out-of-time appeal is taken from a conviction for burglary of a building. After
the jury found appellant guilty, it also found that appellant had been previously convicted of two
felonies and assessed his punishment at 99 years' imprisonment.

 Appellant advances four points of error. First, appellant challenges the legal
sufficiency of the evidence to sustain the conviction. Second, appellant claims that the court's
charge to the jury was fundamentally flawed because it failed to properly apply the law of parties
to the facts of the case. Third, appellant urges that he was deprived of the effective assistance of
trial counsel for his failure to object to the flawed charge on the law of parties. Fourth, appellant
contends that the trial court erred in refusing appellant's requested jury instruction defining
possession.

 Kurzon Richard Nickens testified that he was the president of the Niktel Company,
which was in the process of merging with U.S. Paytel in January 1987. Between 9 and 10 p.m.
on January 11, 1987, Nickens left and secured the company offices on Rutland Drive in Austin. 
When Nickens returned the following morning he learned that the building had been burglarized. 
Don Simmons was the operations manager of Niktel/U.S. Paytel in January 1987. The business
installed and maintained pay telephones at certain locations in Austin and Central Texas. Te
company shared the revenues with some customers. The company collected the money from the
telephone boxes, counted the money at the company office, and made regular deposits. 
Occasionally, money was left at the office overnight. For other customers who owned the
telephones, the company maintained and serviced the telephones. For both purposes, the company
kept the keys to these pay telephones.

 About 6:30 a.m. on January 12, 1987, Simmons came to work and discovered a
broken glass pane near the front door of the company office. Inside the office, he found that the
door to the room where the money was counted had been forcibly broken. Over $700 in coins
kept in canvas bags were missing as well as 50 to 70 telephone keys each kept in a small brown
manilla envelope that reflected the telephone number and the name of the business or customer. 
Simmons immediately reported the burglary to the police. Simmons, who was alleged as
"owner," testified that he had not given anyone permission to break and enter the building. 
Austin Police Officer Sandra Wilkerson responded to the burglary at Niktel on January 12, 1987. 
She attempted unsuccessfully to obtain legible fingerprints at the scene.

 West Lake Hills Police Officer Douglas Whitehead testified that between 4:15 to
4:40 a.m. on January 12, 1987, he observed an older-model "Buick unable to maintain a single
lane of traffic." Whitehead also observed that the Buick's rear license plate light was not
functioning, but in the headlights of his patrol car he was able to see the license plate. A
registration check revealed that the plates had expired in 1985. Officer Whitehead stopped the 
Buick. Jerry Wayne Rosenkrans, the driver, claimed to own the vehicle. Appellant was a
passenger sitting in the front seat. When Whitehead discovered that there were outstanding
burglary warrants for Rosenkrans's arrest, he took Rosenkrans into custody. Before releasing the
Buick to appellant, Whitehead checked his driver's license and learned there were outstanding
traffic warrants for appellant's arrest.

 Following the arrests, Officer Whitehead conducted an inventory search of the
Buick. On the rear seat he found a brown bowling or gym bag. Inside the bag, he discovered
keys in individual envelopes. Rosenkrans or appellant told Whitehead the keys had been found
on the side of the road. In the front on the floorboard between the passenger seat and the door,
the officer found a loose key labeled "Mr. C's." Whitehead explained that "Mr. C's" was a
restaurant that both vehicles had passed on the highway while he was following the Buick. 
Whitehead found a white canvas bag of coins was found under the passenger seat, which
Rosenkrans claimed was his. (1) Whitehead also found a zippered bank bag from the Bank of Austin
on the front seat. Under an armrest was a "Mighty Map" frequently used by law enforcement
personnel to locate street addresses quickly. The map had written on its cover "Bill's Mighty
Map, Austin, Texas." Whitehead did not seize the map but left it in the Buick that was to be
impounded. Evidence showed the map belonged to appellant.

 Austin Police Sergeant John Pendergrass testified that the West Lake Hills Police
Department notified him that it had traced the property seized to Niktel, and that department then
released the property to him. Pendergrass examined the impounded Buick and took the map. He
returned the brown bag with 26 envelopes and keys to Don Simmons. The coins in the canvas
bag totalled $244.90, less than the $700 taken. Simmons identified the 26 envelopes as part of
the 50 to 70 stolen envelopes with keys. Simmons testified that the key to "Mr. C's" was not
returned. He claimed the returned money, but acknowledged that he could not positively identify
the white canvas bag in which the coins were found as belonging to Niktel, for the type of bag
was in common use by Southwestern Bell, North American Industries, and by banks. Simmons
stated that Niktel used bank bags from the Bank of Austin like the one found, but he could not
identify the particular bag as belonging to Niktel. He acknowledged that such bags were available
to customers of the Bank of Austin.

 Jerry Wayne Rosenkrans testified for the defense. He admitted that he had been
convicted for the Niktel burglary, but proclaimed his innocence. Rosenkrans testified that
appellant was a mechanic, that he had worked for appellant, and had once stayed at appellant's
home. He revealed that appellant had contacted him on the evening in question and notified him
that a recording had been left on appellant's telephone recorder giving the location of
Rosenkrans's automobile. Rosenkrans explained that his Buick Apollo had been missing for about
a week. He had assumed that it had been repossessed by a man named "Bob" from whom he had
purchased the car because he had failed to make several car payments. An acquaintance drove
Rosenkrans to appellant's house. Appellant then drove Rosenkrans to the Pepper Tree
Apartments, where they located Rosenkrans's vehicle. They returned to appellant's house in
separate vehicles. About 2:00 a.m. on January 12, 1987, Rosenkrans and appellant left the house
in the retrieved Buick to pick up appellant's truck, which had been loaned to a customer or which
had broken down on a service call. Rosenkrans was not certain as to the location of the truck.

 Rosenkrans described the stop by Officer Whitehead and his arrest on the burglary
warrants. He stated that either he or appellant could have told the officer about finding the keys
on the side of the road. In fact, he testified that he had first seen the keys in the bag on the
backseat of his car when he was at appellant's residence. While appellant was securing his
residence prior to departure, Rosenkrans admitted he reached into the bag and grabbed one of the
keys which just happened to be "Mr. C's" key. Rosenkrans admitted that he claimed the money
in the canvas bag at the time of the stop, but he did not know how the money had gotten into his
car which had just been recovered.

 The standard of review in determining the legal sufficiency of the evidence is
whether, in the light most favorable to the jury's verdict, a rational trier of fact could have found
beyond a reasonable doubt the essential elements of the crime charged. Jackson v. Virginia, 443
U.S. 307, 319 (1979); Valdez v. State, 776 S.W.2d 162, 165 (Tex. Crim. App. 1989), cert.
denied, 495 U.S. 963 (1990). The standard of review is the same in both circumstantial and direct
evidence cases. Herndon v. State, 787 S.W.2d 408, 409 (Tex. Crim. App. 1990). Geesa v.
State, 820 S.W.2d 154 (Tex. Crim. App. 1991) abolished the reasonable hypothesis of innocence
analytical construct in circumstantial evidence cases. However, Geesa is not to be applied
retroactively. Id. at 165. The instant case was tried in 1988 prior to the Geesa decision;
therefore, in applying the standard of review, if we find there is a reasonable hypothesis other
than the guilt of the appellant, then it cannot be said that guilt has been shown beyond a
reasonable doubt. Turner v. State, 803 S.W.2d 423, 427 (Tex. Crim. App.), cert. denied, 112
S. Ct. 202 (1991).

 In his initial point of error challenging the legal sufficiency of the evidence,
appellant, inter alia, asserts that the jury charge did not authorize his conviction as a party to the
burglary but authorized his conviction only as a primary actor and that the evidence is insufficient
to sustain this theory. We review the sufficiency of the evidence against the entire jury charge
given. Jones v. State, 815 S.W.2d 667, 668, 670 (Tex. Crim. App. 1991). We compare the
evidence to the charging instrument as incorporated in the jury charge. It is the jury charge that
authorizes conviction. Jones, 815 S.W.2d at 669-70. This is the legacy of the Benson-Boozer line
of cases. See Boozer v. State, 717 S.W.2d 608 (Tex. Crim. App. 1983); Benson v. State, 661
S.W.2d 708 (Tex. Crim. App. 1983), cert. denied, 467 U.S. 1219 (1984). A charge which fails
to apply a theory of law to the facts of the case is insufficient to authorize a conviction on that
theory, even where the theory of law is abstractly defined in the jury charge. Garrett v. State,
749 S.W.2d 784, 802-03 (Tex. Crim. App. 1988) (op. on reh'g); Polk v. State, 865 S.W.2d 627,
632 (Tex. App.--Fort Worth 1993, pet. ref'd).

 The application paragraph of the jury charge in the instant case authorized
appellant's conviction for burglary on the basis of his own conduct as a primary actor as alleged
in the indictment. (2) This was the only theory of law upon which the burglary conviction was
authorized. There was a complete absence of the law of parties language in the application
paragraph. Cf. Chatman v. State, 846 S.W.2d 329, 330 (Tex. Crim. App. 1993); Plata v. State,
875 S.W.2d 344, 346 (Tex. App.--Corpus Christi 1994, pet. granted).

 Under the same Roman numeral in the charge, the trial court subsequently added
an abstract instruction on the law of parties as follows:



 A person is criminally responsible as a party to an offense if the offense is
committed by his own conduct, by the conduct of another for which he is
criminally responsible, or by both.


 A person is criminally responsible for an offense committed by the conduct of
another if: acting with intent to promote or assist the commission of the offense,
he solicits, encourages, directs, aids, or attempts to aid the other person to commit
the offense.



See Tex. Penal Code Ann. §§ 7.01(a), 7.02(a)(2) (West 1994). The court's charge as submitted
to the jury did not apply the theory of the law of parties to the facts of the case. Thus, the jury
was authorized to convict appellant only on the basis of his own conduct. Walker v. State, 823
S.W.2d 247, 248 (Tex. Crim. App. 1991); Jones, 815 S.W.2d at 670-71. Therefore, we must
determine whether the evidence is sufficient to find appellant guilty of burglary by his own
conduct without regard to any solicitation, encouragement, direction, aid, or any attempted aid
he may have given. See Walker, 823 S.W.2d at 248.

 To be convicted of burglary of a building as a primary actor, the State must offer
evidence that a defendant intentionally or knowingly entered a building without the effective
consent of the owner and attempted to commit or committed theft. Tex. Penal Code Ann.
§ 30.02(a)(3) (West 1994) (3); Davila v. State, 547 S.W.2d 606, 608 (Tex. Crim. App. 1977). In
the instant case, there was independent evidence of a burglary of the building occupied by the
Niktel Company, but no eye witness to the offense. No identifiable fingerprints were found on
the premises. No testimony placed Rosenkrans or appellant at, or even near, the scene of the
burglary at any time. No evidence was offered to show that the burglary required the efforts of
more than one person.

 The State relies upon circumstantial evidence to connect appellant to the burglary. 
In this factual context, the only theory on which the burglary conviction of a primary actor may
be predicated is one in which guilt may be inferred from the possession of recently stolen
property. The inference of guilt in a burglary case sufficient to sustain a conviction may arise
from the defendant's possession of all or any part of the property stolen in a recent burglary. See
Harris v. State, 656 S.W.2d 481, 483 (Tex. Crim. App. 1983); Jackson v. State, 645 S.W.2d
303, 306 (Tex. Crim. App. 1983); Ward v. State, 581 S.W.2d 164, 168 (Tex. Crim. App. 1979);
Rodriguez v. State, 549 S.W.2d 747, 748 (Tex. Crim. App. 1977). However, in order to warrant
such an inference of guilt from the circumstances of possession alone, such possession must be
personal, must be recent, must be unexplained and must involve a distinct and conscious assertion
of right to the property by the defendant. Grant v. State, 566 S.W.2d 954, 956 (Tex. Crim. App.
1978); Rodriguez, 549 S.W.2d at 749; Vela v. State, 771 S.W.2d 659, 661 (Tex. App.--Corpus
Christi 1989, pet. ref'd). Additionally, when evidence of recently stolen property is relied upon
for conviction, it must be shown that the property was the identical or same property taken from
the burglarized place. Owens v. State, 576 S.W.2d 859, 861 (Tex. Crim. App. 1979); Nichols v.
State, 479 S.W.2d 277, 278 (Tex. Crim. App. 1972); Cantu v. State, 655 S.W.2d 278, 280 (Tex.
App.--Corpus Christi 1983, no pet.). Property that is of common use will not suffice. Thompson
v. State, 615 S.W.2d 760, 761-62 (Tex. Crim. App. 1981).

 An inference of guilt of burglary based on an accused's personal possession of
stolen property is not raised where the stolen property is found in a place where others had an
equal right and facility of access. England v. State, 727 S.W.2d 810, 811 (Tex. App.--Austin
1987, no pet.). "Exclusive" possession may be joint possession of two or more acting in concert,
but in such a case there must normally be something else in evidence to connect the defendant
with the offense. See State v. Turner, 490 S.W.2d 72, 74 (Mo. 1973). When a defendant is not
shown to be in exclusive possession of the stolen goods, courts will apply the inference of guilt 
if the actors are exercising joint control over the items. Beard v. State, 458 S.W.2d 85, 88 (Tex.
Crim. App. 1970). In Beard, the defendant and another man were caught committing a second
burglary using tools stolen in the prior burglary charged. The court found that the two men were
exercising joint control of the tools and the possession thereof was sufficient to sustain the
defendant's conviction for burglary. Id. at 88; see also Ross v. State, 463 S.W.2d 190, 191 (Tex.
Crim. App. 1971) (where there was also evidence of flight and the testimony of an accomplice
witness); Sanders v. State, 231 S.W.2d 413, 414 (Tex. Crim. App. 1950); Robinson v. State, 658
S.W.2d 779, 781 (Tex. App.--Beaumont 1983, no pet.). Cf. Randolph v. State, 505 S.W.2d 845,
846-47 (Tex. Crim. App. 1974) (holding evidence insufficient to show that the defendant and his
brother were acting together and exercising joint control and possession of the stolen property).

 In the instant case, appellant was not the owner or driver of the car in which the
stolen items were found. He was a passenger. None of the missing items were found on his
person. The car was a place where another had an equal or perhaps greater right and facility of
access. Clearly some of the items were in close juxtaposition to both Rosenkrans and appellant,
but to show exclusive or personal possession by virtue of joint possession the actors must be
exercising joint control over the items, and generally there must be something else in evidence to
connect the defendant to the offense. Appellant made no attempt to flee, made no incriminating
statements, and made no distinct and conscious assertion of right to the property.

 As to the property found in the Buick, the evidence shows that the white canvas bag
containing the coins was of common use and that the quarters, dimes, and nickels in the bag were
common United States currency. The bag and coins could not be positively identified as
belonging to the Niktel Company. There was no showing that these items were the same or
identical property stolen so as to support the inherence of guilt. The same was true of the empty
bank bag from the Bank of Austin. The twenty-six keys in small envelopes were found inside a
brown gym bag on the back seat of the Rosenkrans' car. The keys were not in plain view. The
twenty-six keys were identified as stolen property taken from the Niktel Company. A key labeled
"Mr. C's" was found on the front floorboard of the Buick. Simmons testified that "Mr. C's" key
was not returned to the Niktel Company, and he did not identify that key as stolen property. (4) The
key was never introduced into evidence. While the twenty-six keys were identified as stolen
property, there is no showing that appellant made a distinct and conscious assertion of a right to
the keys or that they were in his personal possession or that he was jointly exercising control over
the keys.

 The four criteria of Grant have not been met. Grant, 566 S.W.2d at 956; see also
Jackson, 645 S.W.2d at 306. An inference of guilt from the unexplained possession of recently
stolen property has not been raised. Moreover, the instant case is a pre-Geesa circumstantial
evidence case subject to the reasonable hypothesis analytical construct. If there is a reasonable
hypothesis other than the guilt of the defendant, it cannot be said that guilt has been shown beyond
a reasonable doubt. Turner, 803 S.W.2d at 427. Every circumstantial evidence case must
necessarily be tested by its own facts to determine the legal sufficiency of the evidence supporting
the conviction. McCarron v. State, 605 S.W.2d 589, 593 (Tex. Crim. App. 1980). Proof,
however, that amounts only to a strong suspicion or mere probability is insufficient. Id. We
remain cognizant that "proof beyond a reasonable doubt means proof to a high degree of
certainty." Geesa, 820 S.W.2d at 163. The question in the instant case is confined to whether
the evidence is sufficient to show that appellant was guilty of burglary as a primary actor by virtue
of his own conduct. We conclude, viewing the evidence in the light most favorable to the jury's
verdict, that no rational trier of fact could have found beyond a reasonable doubt all the essential
elements of the offense charged. Appellant's first point of error is sustained.

 In view of our disposition of the first point of error, we do not reach the other
points of error. As a result of the insufficiency of the evidence to sustain the conviction, the
judgment is reversed, and appellant is ordered acquitted. See Burks v. United States, 437 U.S.
1 (1978); Greene v. Massey, 437 U.S. 19 (1978).



 

 John F. Onion, Jr., Justice

Before Justices Powers, Jones and Onion*

Reversed and Reformed

Filed: February 1, 1995

Do Not Publish








* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   Whitehead testified that there was $244.90 in coins in the bag. It does not appear that
he counted the coins at the scene. 
2.   If the evidence supports a charge on the law of parties, the trial court may charge the
jury on the law of parties, even though there is no allegation of parties in the indictment. 
Pitts v. State, 569 S.W.2d 898, 900 (Tex. Crim. App. 1978).
3.   This prosecution is governed by the Penal Code in effect at the time of the commission
of the offense -- September 12, 1987. In those instances in which the present Penal Code
provision is identical to that in effect at the time of the offense, the present code is cited for
the sake of convenience.
4.   Rosenkrans did testify that when he first observed the brown gym bag after recovering
his automobile he removed one of the keys from the bag and placed it on the front seat of the
car. Appellant was not present at the time.