

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-14-00222-CR

---

TAMMY KAY TAYLOR, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 1423993

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

After a bench trial, Tammy Kay Taylor was found guilty of burglary of a habitation and sentenced to fifteen years' confinement.

On appeal, Taylor contends that the trial court erred (1) by admitting testimony regarding an extraneous offense, and (2) by making a *Hardesty*[1] inference.

We affirm the trial court's judgment because (1) Taylor failed to preserve error regarding the extraneous offense testimony, and (2) the trial court was entitled to make a *Hardesty* inference.

## I.      Factual Background

Jitendra Patel and his wife, Jaya Patel, own and operate the Royal Inn, a hotel in Sulphur Springs. The Patels also live at the hotel, but the owners' apartment is locked, and the employees do not have permission to enter it. On October 22, 2013, Jitendra hired Taylor as one of the hotel's front desk clerks.

On December 3, 2013, about six weeks after hiring Taylor, the Patels took a vacation trip to India and did not return until January 17, 2014. Before leaving, Jitendra informed his employees, including Taylor, that he would be gone for an extended period of time.

When the Patels returned from India, they discovered that their entire apartment had been ransacked, with papers, property, and furniture scattered all around. Jitendra testified that it looked like someone had "[s]electively gone through" the bedrooms, back office, living room, and kitchen "to find . . . the valuable stuff."

---

[1]*Hardesty v. State*, 656 S.W.2d 73 (Tex. Crim. App. 1983).

At the time the Patels returned from India, Jitendra believed Taylor still worked at the hotel, but he did not find her working at the front desk. When Jitendra spoke with Taylor on the telephone, she told him that she had to "take care of some business in Dallas," that "somebody [was] in the hospital or something," that she needed to be in Dallas, and that she would "be back as soon as possible." Taylor did not mention the burglary and acted as though everything was normal. Jitendra never saw Taylor at the hotel again.

After some of the stolen property was found, Taylor was indicted for burglary of a habitation, a second degree felony. The case was tried to the court rather than a jury. At trial, Wanda Henderson testified that she had been taking care of family friend Ron Hansen for about ten years. She recalled that during December 2013, when the Patels were in India, there was an ice storm in the area and that because Hansen's home did not have working heat, she checked him into the Royal Inn. Henderson met Taylor while checking Hansen out of the hotel. Through her conversation with Taylor, Henderson learned that Taylor and her husband, James, were homeless and that they might be interested in being "live-in caretaker[s] for Mr. Hansen."

Taylor told Henderson that before taking the caretaker position, she and her husband wanted to wait until the Patels returned from India. In January 2014, apparently having accepted the caretaker position, Taylor and James drove to Hansen's home in a pickup truck and spent two days moving their things into the bedroom where they would be living. After they moved their things into the bedroom, Taylor said that they "would be back Saturday to start the job," and they left.

3

After hearing witness testimony and the arguments of counsel, the trial court found Taylor guilty of burglary of a habitation. She was sentenced to fifteen years' confinement. Taylor perfected this appeal, raising two points of error.

## II. Did the Trial Court Err in Admitting Extraneous-Offense Testimony?

At trial, Rupinderit Singh testified that when Taylor worked at his Family Mart convenience store in Sulphur Springs, she stole approximately $4,000.00 from that business. In her first point of error, Taylor contends that the trial court erred by admitting Singh's testimony regarding this extraneous offense.

In order to preserve alleged error for appellate review, a party must make a timely objection to the trial court or make some request or motion bringing the issue to the trial court's attention. *See* TEX. R. APP. P. 33.1. Here, Singh twice testified that Taylor previously stole money from his business, but Taylor failed to object to the testimony on either occasion. Therefore, Taylor failed to preserve this complaint for our review. *See* TEX. R. APP. P. 33.1; *Vidaurri v. State*, 49 S.W.3d 880, 886 (Tex. Crim. App. 2001) (failure to properly object at trial waives appellate review); *Borders v. State*, 846 S.W.2d 834, 836 (Tex. Crim. App. 1992) (per curiam).

## III. Did the Trial Court Err by Making a *Hardesty* Inference?

In her second point of error, Taylor complains of a *Hardesty* inference made by the trial court. *Hardesty* and its progeny hold that when a defendant is found in possession of recently stolen property and fails to provide a reasonable explanation for such possession, a fact-finder may reasonably infer that the defendant stole the property. *Hardesty*, 656 S.W.2d at 76–77; *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006). However, "no inference of guilt can be raised

4

where police found the stolen property in a place where others have an equal right and facility of access." *Blevins v. State*, 6 S.W.3d 566, 569–70 (Tex. App.—Tyler 1999, pet. ref'd). On appeal, Taylor argues that the trial court could not validly utilize a *Hardesty* inference in reaching its verdict because the stolen property in this case was found in a place—Hansen's home—where at least two other people—Hansen and Henderson—had an equal right and facility of access.[2]

At the end of the State's case, the State asked the trial court about a possible *Hardesty* inference:

> [STATE]:··Your Honor, State has no further witnesses, no further exhibit evidence. We would -- at this time, if we could take up the issue of the Hardesty inference?
>
> (State rests.)
>
> . . . .
>
> THE COURT: Did you provide this same -- both the case -- the Hardesty case and the section from the Texas Practice Guide -- Texas Practice Series regarding the Hardesty inference to Mr. Fergurson?
>
> [STATE]: I did, Your Honor.
>
> THE COURT: Now, you correct me if I'm wrong, but would this not just be part of your closing arguments?
>
> [STATE]: Well, I believe it's a legal device. I know that there's no jury here. It's not a presumption.
>
> THE COURT: Right.
>
> [STATE]: But it is -- it's an inference that the Court can find --
>
> THE COURT: Sure.

---

[2]Taylor does not otherwise challenge the sufficiency of the evidence in this case.

5

[STATE]: -- which I think would help our case, but we could certainly just argue. That's true.

THE COURT: What I'm going to do is just kind of understand that that's going to be part of the State's argument in support of their burden of proof.
And so the State has rested their case in chief.

However, after closing arguments, the trial court found that "the State [had] met [its] burden of proving Ms. Taylor guilty beyond a reasonable doubt" and noted that "[t]his Hardesty inference [was] actually very helpful in this particular case."[3]

Here, Taylor contends that the court could not employ a *Hardesty* inference to infer her guilt because Hansen and Henderson both had equal access and facility to the home where the stolen property was found. *See Pardee v. State*, No. 06-11-00226-CR, 2012 WL 3516485, *2 (Tex. App.—Texarkana Aug. 16, 2012, pet. ref'd) (mem. op., not designated for publication) (citing *Blevins*, 6 S.W.3d at 569–70).[4] However, Henderson testified that Taylor and James had moved "nice looking," "big suitcases" from their truck into Hansen's home. When Henderson complimented Taylor on the nice suitcases, Taylor said that she and James bought them at Goodwill for "about $1.50" each. Patel later identified the suitcases as property stolen from his home.

---

[3]Despite the State's argument to the contrary, the record clearly reflects that the trial court made a *Hardesty* inference in reaching its verdict.

[4]We note that *Blevins* also concluded that fingerprints found on the outside of a window used to enter the burglarized dwelling were legally insufficient evidence. *Blevins*, 6 S.W.3d at 570. The Tyler Court relied on *Phelps v. State*, which required evidence "excluding every reasonable hypothesis." *Phelps v. State*, 594 S.W.2d 434, 436 (Tex. Crim. App. 1980). Since its opinion in *Phelps*, the Texas Court of Criminal Appeals has held that the State is no longer required to exclude every reasonable hypothesis. *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995). This opinion should not be interpreted as endorsing all conclusions reached in *Blevins*.

The trial court, as the sole fact-finder, was entitled (1) to believe Henderson's testimony,[5] (2) to find that Taylor was in exclusive possession of or that Taylor and James jointly possessed the suitcases before arriving at Hanson's home, (3) to find that Taylor made a distinct and conscious assertion of right to the suitcases,[6] (4) to find that Taylors' explanation of how she acquired possession of the suitcases to be incredible, and (5) to employ a *Hardesty* inference in reaching its verdict in this case. *See Hardesty*, 656 S.W.2d at 76–77. Therefore, we overrule this point of error.

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:     March 25, 2015
Date Decided:       April 23, 2015

Do Not Publish

---

[5]*See Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984).

[6]*See Rodriquez v. State*, 549 S.W.2d 747 (Tex. Crim. App. 1977).