Taft JACKSON, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 66102–66105.

Court of Criminal Appeals of Texas.

Feb. 9, 1983.

Catherine E. Greene, Houston (court-appointed), for appellant.

John B. Holmes, Jr., Dist. Atty., Alvin M. Titus and Chris Hanger, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

This is an appeal from an order revoking probation in trial court Cause No. 185,023

and from convictions for attempted capital murder, burglary of a motor vehicle, and unauthorized use of a motor vehicle in Cause Nos. 297,561; 306,982, and 306,983, respectively. Punishment is ten years imprisonment for each offense, save attempted capital murder which is fifteen years and one day.

Appellant contends that evidence presented at trial is insufficient to support revocation of probation, conviction for burglary of a motor vehicle, conviction for unauthorized use of a motor vehicle, and conviction for attempted capital murder. Furthermore, appellant contends that fundamental error exists in the failure of the judgment and sentence to comply with the trial court's decision.

Viewed in a light most favorable to the judgment, the record reflects the following facts:

On May 31, 1979, Ken Gosnell, a truck driver from North Carolina, arrived in Houston. Gosnell spent the night at the Houston Motel on Interstate 45. Prior to retiring at 5:00 o'clock p.m., he locked the back and side doors of his trailer. The trailer contained fifteen cases of frozen soft-shelled crabs addressed for delivery to "Rudi's Restaurant in care of Magnolia Seafood."

On June 1, 1979, Gosnell drove his truck to the delivery destination in time for the 7:00 o'clock a.m. opening. Gosnell testified that he did not inspect the trailer doors until arriving at the delivery place. When he started to open the back door he noticed someone had apparently tampered with the lock. He then checked the side door and discovered its lock missing. Inside the trailer Gosnell found only one case of crabs remained, with fourteen cases missing. The police were notified and a burglary was reported. The freight was recovered two weeks later at Houston Terminal Warehouse. Gosnell was able to positively identify the fourteen cases of crabs by the shipping stamp on each case.

During the early morning hours of June 1, 1979, Detective J.D. Cullar of the Houston Police Department's burglary and theft division was on routine patrol. At approximately 2:00 o'clock a.m. Cullar was investigating an area near the 5000 block of Marable where a number of stolen vehicles had been located previously. Cullar testified he observed a white, 1979 van in an apartment complex parking area, which was reported stolen.

A surveillance of the stolen van was commenced. The surveillance team consisted of Cullar in an unmarked police vehicle, Officer M.E. Hurley in another unmarked police vehicle, a third unmarked police vehicle, and two marked police vehicles on standby in the general area.

At approximately 5:30 a.m. a light blue Ford Econoline van[1] approached the white van and parked beside it. A man got out of the blue van and entered the white van. After approximately five minutes both vans left the parking area, one following immediately behind the other.

The surveillance team then attempted to stop both vans. As the police officers began pursuing the vans, "they started running from us." Cullar testified that the unmarked police car was equipped with "portable red lights on the top and sirens" which were being used to stop the vans. During the high speed chase of the vans, the fleeing vehicles began proceeding in different directions.

Officer Cullar testified that he pursued the white van which circled the block three times and parked in a vacant lot. A man got out of the white van and began to run on foot. The driver, later identified as Cleotis Roberts, was placed under arrest.

Officer Hurley testified regarding the pursuit of the blue van. When the blue van finally came to a stop it was situated in a vacant field. Appellant exited the blue van from the passenger door. Hurley dismounted his vehicle and yelled, "Police officer," exhibiting his identification badge to the appellant who was no more than fifteen feet away.

---

1. The blue van had also been reported as sto-  len.

As the appellant was in the process of jumping from the passenger door he aimed a pistol at Officer Hurley and fired one shot. After firing, appellant fled on foot. Hurley, who was unhurt, searched the abandoned blue van, finding fourteen cases of frozen, soft-shelled crabs. Regarding the markings on the cases of crab, Hurley testified, "I believe it said, 'Consigned to Rudi's Restaurant, care of Magnolia Seafood, Houston, Texas.'" The stolen crabs were transported to Houston Terminal Warehouse where they were eventually returned to their rightful owner.

During April, 1974, appellant was convicted for the offense of possession of heroin. Punishment was imprisonment for ten years. The imposition of sentence was suspended and he was accorded adult probation, among the terms of which was that he: "(a) commit no offense against the laws of this or any other State of the United States."

On January 14, 1980, the State filed a motion to revoke probation alleging six separate violations of the aforementioned probationary condition. Furthermore, the Harris County grand jury returned indictments which alleged that the appellant had committed the offenses of theft and unauthorized use of a motor vehicle, burglary of a motor vehicle, and attempted capital murder of a peace officer. The trial court conducted simultaneously a hearing on the allegations in the motion to revoke probation and a trial on the charges in the indictments.

The trial judge found the allegations of burglary of a vehicle and unauthorized use of a motor vehicle true and did not address the attempted capital murder allegation. Sentence was assessed at ten years confinement. Additionally, the court found appellant guilty of unauthorized use of a motor vehicle, burglary of a motor vehicle, and attempted capital murder. Sentence in the unauthorized use and burglary of a motor vehicle cases was assessed at ten years each. Sentence for attempted capital murder was imprisonment for fifteen years and one day.

I.

Appellant asserts that the evidence is insufficient to support revocation of probation premised upon unauthorized use of a motor vehicle and burglary of a motor vehicle with intent to commit theft.

■ The standard of proof in a revocation of probation is a preponderance of the evidence; in a trial on the substantive charge, proof beyond a reasonable doubt is required. *Lloyd v. State,* 574 S.W.2d 159 (Tex.Cr.App.1978). The only question presented in an appeal from an order revoking probation is whether the trial court abused its discretion in revoking the appellant's probation. *Rice v. State,* 548 S.W.2d 725 (Tex.Cr.App.1977) (Rehearing denied.)

A.

■ Unauthorized use of a motor vehicle is defined in V.T.C.A. Penal Code, Section 31.07:

"(a) A person commits an offense if he intentionally or knowingly *operates* another's . . . motor-propelled vehicle without the effective consent of the owner." [Emphasis added.]

In the instant situation the record reveals that the vehicle was reported stolen by the owner's "location manager" on May 25, 1979. No evidence whatsoever was presented regarding the initial theft. The only testimony connecting the appellant with the vehicle related to the events of June 1, 1979.

Officer Hurley testified that following the high speed chase of the van the appellant exited from the "passenger's" door. Hurley testified that another person who was unidentified, drove and exited via the driver's door. Although the interior of the van was dusted for fingerprints, the appellant's prints were not identifiable.

In *Shaw v. State,* 529 S.W.2d 75 (Tex.Cr. App.1975) this Court affirmed a conviction for unauthorized use of a motor vehicle where the appellant claimed only to have been a passenger. In *Shaw* the appellant was the only person in the vehicle. A police officer was able to positively identify Shaw as the driver.

In the present situation there is no evidence that the appellant ever drove the vehicle. The uncontroverted testimony of Officer Hurley demonstrates the involvement of another person who drove and thus *operated*[2] the vehicle. The trial court erred in finding that the appellant violated the terms of his probation by committing the offense of unauthorized use of a motor vehicle.

### B.

Burglary of Vehicles is defined in V.T.C.A. Penal Code, Section 30.04:

"(a) A person commits an offense if, without the effective consent of the owner, he breaks into or enters a vehicle or any part of a vehicle with intent to commit any felony or theft."

The owner of the vehicle, Gosnell, testified at trial that his trailer had been broken into and fourteen cases of crabs were taken sometime between 5:00 p.m. on May 31, and 7:00 a.m. on June 1. Officer Hurley testified that his search of the van in which the appellant had been riding as a passenger at 5:30 a.m. revealed fourteen cases of crabs. There was no testimony that the appellant was seen at or near the scene of the truck burglary, nor were his fingerprints recovered from the scene.

■ In this factual context the only theory on which a burglary conviction might be predicated is one in which guilt may be presumed from the possession of recently stolen goods. When a defendant is found in recent, unexplained possession of all or part of the items taken in a burglary, that evidence is sufficient to convict for the burglary. *Ward v. State,* 581 S.W.2d 164 (Tex.Cr. App.1979). This presumption does not operate without limitation:

"An inference or a presumption of a defendant's guilt of a burglary or of a theft sufficient to sustain a conviction may arise from the appellant's possession of property stolen or taken in a recent burglary. However, in the prosecution for either a theft or a burglary, to warrant such an inference or presumption of guilt from the circumstances of possession alone, such possession *must be personal,* must be recent, must be unexplained, and *must involve a distinct and conscious assertion of right to the property by the defendant."* [Emphasis added.] *Rodriguez v. State,* 549 S.W.2d 747 (Tex.Cr. App.1977).

In *Rodriguez,* while the defendant was in the hospital, police officers found a file box on a closet shelf in the defendant's bedroom. The file box had been taken in a recent burglary. The defendant shared the apartment with his mother and girlfriend. In holding that the possession of the stolen property was insufficient evidence to support a burglary conviction this Court noted that the State had failed to demonstrate that the possession was personal and the defendant had asserted a distinct and conscious right to the property.

■ In the instant situation the appellant did not own the vehicle in which the items were found. The record shows that he was not even driving the vehicle, but was merely a passenger. Despite the mode of flight which was employed to avoid being stopped by police officers, it is not possible to infer that appellant was exercising *personal* possession nor a distinct and conscious right to the fourteen cases of crabs.

### II.

■ Appellant challenges the conviction for unauthorized use of a motor vehicle in Cause Number 306,983, and burglary of a motor vehicle in Cause Number 306,982. The factual evidence presented at the revocation hearing was relied upon for the convictions. Having been found insufficient to meet the necessary burden of proof for revocation, the evidence is clearly insufficient to satisfy the more rigorous, *beyond a reasonable doubt* standard to sustain the convictions. The convictions in Cause

---

**2.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

Numbers 306,983 and 306,982, must be reversed.

The appellant maintains that fundamental error exists in the failure of the judgment and sentence to comply with the decision in Cause Number 306,983. In view of the foregoing disposition of the conviction, this ground of error need not be addressed.

### III.

■ Appellant asserts that there was insufficient evidence to support a conviction for attempted capital murder. Specifically, appellant contends that there was no showing that appellant knew Officer Hurley was a peace officer. In pertinent part, V.T.C.A. Penal Code, Section 19.03, provides:

"(a) A person commits an offense if he commits murder as defined under Section 19.02(a)(1) of this code and:

"(1) the person murders a peace officer or fireman who is acting in the lawful discharge of an official duty and *who the person knows is a peace officer or fireman.* [Emphasis added.]

Evidence was introduced at trial which demonstrated that Officer Hurley was driving a "plain light green colored '75 Dodge." The vehicle was equipped with a siren and flashing roof top flashing lights which were employed in the pursuit of the van in which appellant was riding. During the high speed chase of the van there were two marked, blue and white, police units and three plain units chasing the van.

Upon stopping the van in a vacant lot Officer Hurley got out of his police vehicle:

"A. [Officer Hurley]: It was at that time when I stopped and jumped out of the car Mr. Jackson jumped out of the van.

"Q. [Prosecutor]: Did you attempt to identify yourself in some way as a Houston police officer?

"A. Yes, sir. I yelled 'Police officer.'

"Q. Did you attempt to show or exhibit any form of identification to Mr. Jackson or the van itself?

"A. I had my I.D. in my left hand.

"Q. And does this particular identification have a badge or a shield on it?

"A. Yes, sir, it does.

"Q. How far away was Mr. Jackson from you when he got out of the truck?

"A. Approximately fifteen feet.

"Q. Fifteen?

"A. Yes, sir.

"Q. Any obstructions in between you and Mr. Jackson?

"A. No, sir.

"Q. And is this location where you stopped the van, is this in Harris County, Texas?

"A. Yes, sir, it is.

"Q. Tell us what happened at this point in time.

"A. As I was getting out of the police car, I had my pistol in my right hand, my I.D. in my left hand, I yelled, 'Police,' and the passenger's door swung open first. I started to run to the passenger's door. As I got to the middle of my car, I guess with both feet on the ground Mr. Jackson in the process of jumping from the passenger's door shot one time with a pistol.

"Q. Do you recall what hand he used to fire this pistol?

"A. The best I remember it was his right hand.

"Q. And where was he firing this particular pistol?

"A. In my general direction.

"Q. By 'In my general direction,' can you be more specific?

"A. It looked like he aimed right at me and pulled the trigger.

"Q. How far away would you say the muzzle of that gun was from your person at the time it was fired?

"A. Somewhere between I would say fifteen feet, give or take maybe one or two feet.

"Q. And who was Mr. Jackson looking at when he fired this pistol?

"A. At me.

"Q. Did he say anything at the time he fired the pistol?

"A. No, sir."

Clearly sufficient evidence of all elements of the offense were presented. This ground of error is overruled.

The judgment of the trial court in revoking appellant's probation in Cause No. 185,-023 is reversed and remanded; the conviction for unauthorized use of a motor vehicle in Cause No. 306,983 is reversed and an acquittal is ordered; the conviction for burglary of a motor vehicle in Cause No. 306,-982 is reversed and an acquittal is ordered; the judgment of the trial court in Cause No. 297,561, attempted capital murder, is affirmed.