MORRIS V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-03-077-CR

KEITH ALLAN MORRIS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 90TH DISTRICT COURT OF YOUNG COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Keith Allan Morris was convicted of possession or transport of chemicals with intent to manufacture a controlled substance and was sentenced to ten years’ confinement, probated for ten years, along with a $2,000 fine.  Subsequently, the State filed a motion to revoke Appellant’s community supervision, alleging seven violations of the terms of his probation. After a hearing, the trial court determined that Appellant had violated the conditions set out in the State’s motion to revoke.  The trial court granted the State’s motion to revoke Appellant’s community supervision, and it sentenced him to ten years’ confinement.  In his sole issue, Appellant complains that the trial court abused its discretion in revoking his community supervision because the evidence adduced at his revocation hearing was factually insufficient to support the trial court’s findings that he had violated the terms and conditions of his community supervision.  We will affirm. 

While Appellant argues that the trial court abused its discretion, he also maintains that the State presented factually insufficient evidence to support its burden at the revocation hearing.  We, along with several other courts of appeals, however, have held that a factual sufficiency review is not the standard under which we analyze revocation proceedings.
(footnote: 2)  Rather, we review the trial court’s order revoking Appellant’s community supervision under the traditional abuse of discretion standard.
(footnote: 3)
 In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated the terms and conditions of community supervision.
(footnote: 4)  The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court’s ruling.
(footnote: 5)  If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking the community supervision.
(footnote: 6)  If there is some evidence to support the trial court’s finding of even a single violation, the revocation will be upheld.
(footnote: 7)
 Among the conditions imposed on Appellant, the court ordered Appellant:

3. Avoid persons or places of disreputable or harmful character; do not associate with persons with felony criminal records, persons who possess, use, or sell controlled substances, dangerous drugs, inhalants and narcotic or habit forming drugs; avoid places where controlled substances, dangerous drugs, inhalants, and narcotic or habit forming drugs are illegally possessed, sold, or used and places where alcoholic beverages are possessed, sold, or used. 

In its motion to revoke, the State alleged that Appellant had violated condition No. 3 when he “on or about the 6
th
 day of July, 2002, said Defendant was arrested in Wichita County, Texas, along with Dana Lynette Nail, a known felon, for manufacture of a controlled substance.” 

During the revocation hearing, the State offered evidence to support its allegation that Appellant had failed to avoid a place of harmful character in violation of Condition No. 3.  DPS officer James Blake, who is currently assigned to the North Texas Regional Drug Task Force in Wichita Falls, Texas, testified that he had been with the narcotics division of the DPS for seven years and had received training dealing with clandestine drug laboratories.  Sergeant Blake testified that, on July 6, 2002, he received a tip about a possible methamphetamine laboratory in Electra, Texas and began an investigation of a residence in Electra.  After obtaining consent from the residence’s owner, Sergeant Blake, along with other peace officers, searched the suspected methamphetamine laboratory. 

Sergeant Blake testified that before going into the Electra residence, while standing forty to fifty feet from the home, he detected a strong odor that, based on his training, was consistent with the smell of a clandestine methamphetamine laboratory.  Upon entering the residence around 12:45 a.m., the officers opened other doors to the house because the smell was so overwhelming.  The officers located a woman in a bedroom on the first floor of the home, and they found Appellant upstairs hiding behind a trap door in a “squatting position.”

Sergeant Blake testified that, within ten to fifteen feet of the trap door, he found a glass jar of what he suspected was liquid methamphetamine. Sergeant Blake also testified that he discovered various components of what is commonly referred to as a “Nazi drug lab.”  He testified that, among other items, he found an HCO generator, towels and coffee filters with a strong odor of anhydrous ammonia, and substances in both powder form and in a liquid state in a bucket, which testing later confirmed were methamphetamine that had “not been finalized.”  When asked whether, “in [his] professional opinion and with [his] experience and background, . . . it look[ed] as though . . . [methamphetamine] was being manufactured in that residence,” Sergeant Blake responded, “Yes, sir.”

Appellant testified that his friend drove him from Wichita Falls to Electra and dropped him off at 9:45 p.m. at the residence so that he could pick up his father’s truck.  Appellant stated that the reason he did not leave was because he was waiting for his brother, who had the keys to the truck.  Appellant testified that he did not know Dana Lanette Nail, but he acknowledged that she was in the house went he went inside.  According to Appellant, he did not know whether she was participating in manufacturing the methamphetamine found in the house. 

Appellant admitted, however, that he was in the residence for about three hours.  Appellant also testified that he noticed a strange smell when he walked into the residence, and he later admitted that he knew what the smell was.  On cross-examination, the State asked, “You knew they were making dope?”  Appellant replied, “Or something like that, yeah.”  Appellant testified that he was about to leave when the police showed up, and he “got scared and hid.”  Maintaining his innocence in connection with the clandestine drug laboratory, Appellant further testified, “I didn’t have nothing to do with none of that.”

Based on our careful review of the record, we cannot say that the trial court abused its discretion in revoking Appellant’s community supervision upon its finding that Appellant had violated the prohibition in Condition No. 3 that required him to “avoid places where controlled substances, dangerous drugs, inhalants, and narcotic or habit forming drugs are illegally possessed, sold, or used.”
(footnote: 8)  While the State alleged and offered proof that Appellant had violated several other conditions of his community supervision, proof by a preponderance of the evidence of any 
one
 of the alleged violations of the conditions of community supervision is sufficient to support a revocation order.
(footnote: 9)  Accordingly, because the State offered proof beyond a preponderance of the evidence that Appellant violated Condition No. 3 of his community supervision, we need not address Appellant’s complaints regarding the other grounds on which the State sought to revoke his community supervision.
(footnote: 10)
 We overrule Appellant’s sole issue and affirm the trial court’s judgment.

PER CURIAM

PANEL F: GARDNER, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED:  April 1, 2004

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Becker v. State
, 33 S.W.3d 64, 66 (Tex. App.—El Paso 2000, no pet.); 
Allbright v. State
, 13 S.W.3d 817, 818 (Tex. App.—Fort Worth 2000, pet. ref’d); 
Joseph v. State
, 3 S.W.3d 627, 642 (Tex. App.—Houston [14
th
 Dist.] 1999, no pet.); 
Johnson v. State
, 2 S.W.3d 685, 687 (Tex. App.—Fort Worth 1999, no pet.); 
Liggett v. State
, 998 S.W.2d 733, 735-36 (Tex. App.—Beaumont 1999, no pet.); 
Johnson v. State
, 943 S.W.2d 83, 85 (Tex. App.—Houston [1
st
 Dist.] 1997, no pet.); 
Brumbalow v. State
, 933 S.W.2d 298, 299-300 (Tex. App.—Waco 1996, pet. ref’d).

3:
Cardona v. State
, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984);
 Jackson v. State
, 645 S.W.2d 303, 305 (Tex. Crim. App. 1983).

4:
Cobb v. State
, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993).

5:
Cardona
, 665 S.W.2d at 493; 
Garrett v. State
, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981); 
Allbright
, 13 S.W.3d at 819.

6:
Cardona
, 665 S.W.2d at 493-94.

7:
Cochran v. State
, 78 S.W.3d 20, 27 (Tex. App.—Tyler 2002, no pet.) (citing 
Becker
, 33 S.W.3d at 66-67).

8:
See
 
Cardona
, 665 S.W.2d at 493;
 Jackson
, 645 S.W.2d at 305; 
Allbright
, 13 S.W.3d at 819.

9:
Moore v. State
, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); 
Sanchez v. State,
 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980); 
see also
 
Cochran
, 78 S.W.3d at 27.

10:
See
 
Moore
, 605 S.W.2d at 926; 
Sanchez,
 603 S.W.2d at 871.