COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-077-CR

 
KEITH ALLAN MORRIS                                                           APPELLANT
 
 
V.
 
 
THE STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM THE 90TH DISTRICT COURT 
OF YOUNG COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Keith Allan Morris was convicted of possession or transport of chemicals with 
intent to manufacture a controlled substance and was sentenced to ten years’ 
confinement, probated for ten years, along with a $2,000 fine.  
Subsequently, the State filed a motion to revoke Appellant’s community 
supervision, alleging seven violations of the terms of his probation.  
After a hearing, the trial court determined that Appellant had violated the 
conditions set out in the State’s motion to revoke.  The trial court 
granted the State’s motion to revoke Appellant’s community supervision, and 
it sentenced him to ten years’ confinement.  In his sole issue, Appellant 
complains that the trial court abused its discretion in revoking his community 
supervision because the evidence adduced at his revocation hearing was factually 
insufficient to support the trial court’s findings that he had violated the 
terms and conditions of his community supervision.  We will affirm.
        While 
Appellant argues that the trial court abused its discretion, he also maintains 
that the State presented factually insufficient evidence to support its burden 
at the revocation hearing.  We, along with several other courts of appeals, 
however, have held that a factual sufficiency review is not the standard under 
which we analyze revocation proceedings.[2]  
Rather, we review the trial court’s order revoking Appellant’s community 
supervision under the traditional abuse of discretion standard.[3]
        In 
a revocation proceeding, the State must prove by a preponderance of the evidence 
that the defendant violated the terms and conditions of community supervision.[4]  The trial court is the sole judge of the credibility 
of the witnesses and the weight to be given their testimony, and we review the 
evidence in the light most favorable to the trial court’s ruling.[5]  If the State fails to meet its burden of proof, the 
trial court abuses its discretion in revoking the community supervision.[6]  If there is some evidence to support the trial 
court’s finding of even a single violation, the revocation will be upheld.[7]
        Among 
the conditions imposed on Appellant, the court ordered Appellant:
 
3.  Avoid persons or 
places of disreputable or harmful character; do not associate with persons with 
felony criminal records, persons who possess, use, or sell controlled 
substances, dangerous drugs, inhalants and narcotic or habit forming drugs; 
avoid places where controlled substances, dangerous drugs, inhalants, and 
narcotic or habit forming drugs are illegally possessed, sold, or used and 
places where alcoholic beverages are possessed, sold, or used.

 
In its motion to revoke, the 
State alleged that Appellant had violated condition No. 3 when he “on or about 
the 6th day of July, 2002, said Defendant was arrested in Wichita 
County, Texas, along with Dana Lynette Nail, a known felon, for manufacture of a 
controlled substance.”
        During 
the revocation hearing, the State offered evidence to support its allegation 
that Appellant had failed to avoid a place of harmful character in violation of 
Condition No. 3. DPS officer James Blake, who is currently assigned to the North 
Texas Regional Drug Task Force in Wichita Falls, Texas, testified that he had 
been with the narcotics division of the DPS for seven years and had received 
training dealing with clandestine drug laboratories.  Sergeant Blake 
testified that, on July 6, 2002, he received a tip about a possible 
methamphetamine laboratory in Electra, Texas and began an investigation of a 
residence in Electra.  After obtaining consent from the residence’s 
owner, Sergeant Blake, along with other peace officers, searched the suspected 
methamphetamine laboratory.
        Sergeant 
Blake testified that before going into the Electra residence, while standing 
forty to fifty feet from the home, he detected a strong odor that, based on his 
training, was consistent with the smell of a clandestine methamphetamine 
laboratory.  Upon entering the residence around 12:45 a.m., the officers 
opened other doors to the house because the smell was so overwhelming.  The 
officers located a woman in a bedroom on the first floor of the home, and they 
found Appellant upstairs hiding behind a trap door in a “squatting 
position.”
        Sergeant 
Blake testified that, within ten to fifteen feet of the trap door, he found a 
glass jar of what he suspected was liquid methamphetamine.  Sergeant Blake 
also testified that he discovered various components of what is commonly 
referred to as a “Nazi drug lab.”  He testified that, among other 
items, he found an HCO generator, towels and coffee filters with a strong odor 
of anhydrous ammonia, and substances in both powder form and in a liquid state 
in a bucket, which testing later confirmed were methamphetamine that had “not 
been finalized.”  When asked whether, “in [his] professional opinion 
and with [his] experience and background, . . . it look[ed] as though . . . 
[methamphetamine] was being manufactured in that residence,” Sergeant Blake 
responded, “Yes, sir.”
        Appellant 
testified that his friend drove him from Wichita Falls to Electra and dropped 
him off at 9:45 p.m. at the residence so that he could pick up his father’s 
truck.  Appellant stated that the reason he did not leave was because he 
was waiting for his brother, who had the keys to the truck.  Appellant 
testified that he did not know Dana Lanette Nail, but he acknowledged that she 
was in the house went he went inside.  According to Appellant, he did not 
know whether she was participating in manufacturing the methamphetamine found in 
the house.
        Appellant 
admitted, however, that he was in the residence for about three hours.  
Appellant also testified that he noticed a strange smell when he walked into the 
residence, and he later admitted that he knew what the smell was.  On 
cross-examination, the State asked, “You knew they were making dope?” 
Appellant replied, “Or something like that, yeah.”  Appellant testified 
that he was about to leave when the police showed up, and he “got scared and 
hid.”  Maintaining his innocence in connection with the clandestine drug 
laboratory, Appellant further testified, “I didn’t have nothing to do with 
none of that.”
        Based 
on our careful review of the record, we cannot say that the trial court abused 
its discretion in revoking Appellant’s community supervision upon its finding 
that Appellant had violated the prohibition in Condition No. 3 that required him 
to “avoid places where controlled substances, dangerous drugs, inhalants, and 
narcotic or habit forming drugs are illegally possessed, sold, or used.”[8]  While the State alleged and offered proof that 
Appellant had violated several other conditions of his community supervision, 
proof by a preponderance of the evidence of any one of the alleged 
violations of the conditions of community supervision is sufficient to support a 
revocation order.[9]  Accordingly, because the 
State offered proof beyond a preponderance of the evidence that Appellant 
violated Condition No. 3 of his community supervision, we need not address 
Appellant’s complaints regarding the other grounds on which the State sought 
to revoke his community supervision.[10]
        We 
overrule Appellant’s sole issue and affirm the trial court’s judgment.
 
  
                                                          PER 
CURIAM

  
PANEL F:   GARDNER, 
J.; CAYCE, C.J.; and LIVINGSTON, J.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: April 1, 2004


NOTES
1. 
See Tex. R. App. P. 47.4.
2. 
Becker v. State, 33 S.W.3d 64, 66 (Tex. App.—El Paso 2000, no pet.); Allbright 
v. State, 13 S.W.3d 817, 818 (Tex. App.—Fort Worth 2000, pet. ref’d); Joseph 
v. State, 3 S.W.3d 627, 642 (Tex. App.—Houston [14th Dist.] 
1999, no pet.); Johnson v. State, 2 S.W.3d 685, 687 (Tex. App.—Fort 
Worth 1999, no pet.); Liggett v. State, 998 S.W.2d 733, 735-36 (Tex. 
App.—Beaumont 1999, no pet.); Johnson v. State, 943 S.W.2d 83, 85 (Tex. 
App.—Houston [1st Dist.] 1997, no pet.); Brumbalow v. State, 
933 S.W.2d 298, 299-300 (Tex. App.—Waco 1996, pet. ref’d).
3. 
Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); Jackson 
v. State, 645 S.W.2d 303, 305 (Tex. Crim. App. 1983).
4. 
Cobb v. State, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993).
5. 
Cardona, 665 S.W.2d at 493; Garrett v. State, 619 S.W.2d 172, 174 
(Tex. Crim. App. [Panel Op.] 1981); Allbright, 13 S.W.3d at 819.
6. 
Cardona, 665 S.W.2d at 493-94.
7. 
Cochran v. State, 78 S.W.3d 20, 27 (Tex. App.—Tyler 2002, no pet.) 
(citing Becker, 33 S.W.3d at 66-67).
8. 
See Cardona, 665 S.W.2d at 493; Jackson, 645 S.W.2d at 305; 
Allbright, 13 S.W.3d at 819.
9. 
Moore v. State, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); Sanchez 
v. State, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980); see 
also Cochran, 78 S.W.3d at 27.
10. 
See Moore, 605 S.W.2d at 926; Sanchez, 603 S.W.2d at 871.