NO. 07-04-0376-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



JUNE 8, 2005



______________________________




BELINDA VAQUERA, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 242ND DISTRICT COURT OF HALE COUNTY;



NO. B14994-0306; HONORABLE ED SELF, JUDGE



_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION
 Appellant Belinda Vaquera brings this appeal from the revocation of her community
supervision. We affirm the revocation. 

Appellant was charged in June 2003 by indictment with Forgery of a Financial
Instrument occurring in May 2003. She was convicted in November 2003 by the 242nd
District Court on her plea of guilty pursuant to a plea agreement. Punishment was
assessed in conformity with the plea agreement at two years confinement in a state jail
facility, a fine of $500.00, and court costs. Also in compliance with the plea agreement,
imposition of the sentence was suspended for a period of four years, conditioned on
appellant's compliance with the terms of her community supervision. The State filed a
motion to revoke appellant's community supervision on May 19, 2004, alleging three
violations of her community supervision including failure to report as required, failure to
notify the community supervision office of her change of address, and failure to pay fees.

At a July 9, 2004 hearing appellant pled true to the State's allegations and entered
a stipulation of evidence in support. Appellant advised the court her plea was voluntary and
she understood the nature of the proceeding and the consequences of her plea. Her
counsel also informed the court he felt she was competent to proceed with the hearing.

Appellant was the only witness at the revocation hearing. At the conclusion of the
hearing the court found appellant had violated the conditions of her community supervision
and revoked it. The court ordered her to serve the original sentence imposed on her
conviction. She filed a timely notice of appeal and the trial court appointed counsel on
appeal.

Appellant's counsel has filed a brief stating that he has carefully reviewed the record
in this case and concludes there is no reversible error and that the appeal is frivolous. See
Anders v. California, 386 U.S. 738, 744-45, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The
brief discusses the factual and procedural history of the case and evidence presented. In
conformity with counsel's obligation to support the appeal to the best of his ability, Johnson
v. State, 885 S.W.2d 641, 645 (Tex.App.-Waco 1994, pet. ref'd), the brief discusses one
potential complaint on appeal and explains why it does not show reversible error. Counsel
also has filed a motion to withdraw and by letter informed appellant of her right to file a pro
se brief. Id. at 646. By letter dated November 15, 2004, this Court also notified appellant
of her opportunity to submit a response to the Anders brief and motion to withdraw filed by
her counsel, granting her until December 15, 2004, to do so. This court's letter also
reminded appellant to contact her counsel if she needed to review any part of the appellate
record to prepare a response. (1) On December 27, 2004, appellant requested an extension
of time which this court granted allowing her until January 28, 2005 to file a pro se
response. Appellant has not filed a brief or other response. 

In conformity with the standards set out by the United States Supreme Court, we will
not rule on the motion to withdraw until we have independently examined the record. 
Nichols v. State, 954 S.W.2d 83, 86 (Tex.App.-San Antonio 1997, no pet.). If this court
determines the appeal has merit, we will remand it to the trial court for appointment of new
counsel. See Stafford v. State, 813 S.W.2d 503, 511 (Tex.Crim.App.1991).

The potential issue discussed in counsel's brief is factual sufficiency of the evidence
supporting the trial court's determination that appellant violated one of the terms and
conditions of her community supervision. Appellate review of a revocation order is limited
to determining whether the trial court abused its discretion. Cardona v. State, 665 S.W.2d
492, 493 (Tex.Crim.App.1984); Jackson v. State, 645 S.W.2d 303, 305
(Tex.Crim.App.1983). The trial court abuses its discretion in revoking community
supervision if the State fails to meet its burden of proof. Cardona, 665 S.W.2d at 493-94. 
In a revocation proceeding, the State must prove by a preponderance of the evidence that
appellant violated a condition of community supervision as alleged in the motion to revoke. 
Cobb v. State, 851 S.W.2d 871, 874 (Tex.Crim.App.1993). As counsel's brief notes, when
the State alleges more than one violation, proof of any one of them will support revocation. 
Moore v. State, 605 S.W.2d 924, 926 (Tex.Crim.App. [Panel Op.] 1980). The trial judge
in such a proceeding is the sole trier of fact. Taylor v. State, 604 S.W.2d 175, 179
(Tex.Crim.App.1980). A defendant's plea of true to an alleged violation, standing alone,
is sufficient to support the revocation. Moses v. State, 590 S.W.2d 469, 470
(Tex.Crim.App.1979). Appellant signed a stipulation of evidence stating that each alleged
violation of her community supervision was true and pled true to the violations in open
court. The record also supports the court's finding that appellant was competent at the time
of the hearing to make the plea and it was made voluntarily.

Our review convinces us that appellate counsel conducted a complete review of the
record. We have also made an independent examination of the entire record to determine
whether there are any arguable grounds which might support the appeal. (2) See Stafford,
813 S.W.2d at 511. We agree it presents no meritorious grounds for review. The trial court
did not abuse its discretion in revoking appellant's community supervision. We grant
counsel's motion to withdraw and affirm the judgment of the trial court.


 James T. Campbell

 Justice






Do not publish.

1. ' 
 - 
 - 
2. 
 § 
 - 


714, 716 (Tex.App.--Amarillo
1995, no writ). 

 That being said, we turn to the standards of review for challenges to sufficiency of
the evidence. In a legal sufficiency review of the evidence to support an order terminating
parental rights, we look at all (2) the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could have formed a firm belief or conviction
that its finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate
deference to the factfinder's conclusions and the role of a court conducting a legal
sufficiency review, looking at the evidence in the light most favorable to the judgment
means that a reviewing court must assume the factfinder resolved disputed facts in favor
of its finding if a reasonable factfinder could do so. Id. Thus, we disregard all evidence
that a reasonable factfinder could have disbelieved or found to have been incredible. Id. 

 The standard for reviewing the factual sufficiency of termination findings is whether
the evidence is such that a reasonable factfinder could form a firm belief or conviction
about the truth of DFPS's allegations. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). Under
that standard, we consider whether the disputed evidence is such that a reasonable
factfinder could not have resolved the disputed evidence in favor of its finding. In re J.F.C.,
96 S.W.3d at 266. If, in light of the entire record, the disputed evidence that a reasonable
factfinder could not have credited in favor of the finding is so significant that a factfinder
could not reasonably have formed a firm belief or conviction, then the evidence is factually
insufficient. Id.

 According to an offense report of the Texas Department of Public Safety, on April
13, 2001, Colleen and Z.J. were passengers in a pickup driven by Colleen's paramour,
Summerford. After Summerford was stopped for a traffic violation, the DPS trooper
discovered a parole warrant was outstanding for Summerford's arrest. He and Colleen
were taken to Tahoka and arrested for possession of a controlled substance with intent to
deliver. The arresting officer made arrangements for the placement of Z.J. with relatives.

 The offense report also indicated that Summerford had six prior arrests for
narcotics, including delivery of a controlled substance and possession with intention to
deliver, and three prior charges for burglary. During a search of the pickup, in addition to
a substantial quantity of methamphetamine, the officer found a set of scales, baggies, and
syringes. The report further indicated that Colleen had told the officer she knew
Summerford had a criminal record and she had recently used drugs. 

 The evidence is replete with instances of Colleen's drug use. However, Colleen
admitted at trial that she was an addict and had been using methapetamine "all of [Z.J.'s]
life." In addition, Colleen admitted it was not a good thing for her to take Z.J. out with a
drug dealer and that she knew Summerford was selling drugs. 

 Upon being notified of the events of April 13, 2001, the DFPS commenced an
investigation and Z.J. was placed with relatives under a safety plan on June 6, 2001.
Among other things, the safety plan required Colleen to refrain from drug or alcohol use. 
However, she did not comply with the plan and a drug assessment found her to be
chemically dependent. Based on that determination, she was referred to outpatient drug
and alcohol treatment and failed to show up for many appointments. 

 Despite Z.J.'s relatives' admission that they violated the safety plan by allowing Z.J.
to stay with Colleen, he was again placed with them upon their agreement not to allow
Colleen to have contact with Z.J. without the consent of DFPS. Colleen and her relatives,
however, violated the plan and resultantly, Z.J. was placed in foster care. At trial, Colleen
admitted she did not visit with her son between August 15, 2002 and June 2003. 

 A DFPS caseworker testified that Colleen's continued drug use and her failure to
seek treatment and participate in any services offered to help her quit using drugs 
endangered Z.J.'s well being and prevented her from providing a safe environment for him. 
A licensed professional counselor worked with Z.J. for several months. According to her
testimony, initially he was overactive, impulsive, and defiant; however, while in foster care
and under her counseling, he exhibited "excellent progress overall." The counselor further
testified that Z.J. responded very well to his placement at Boys Ranch and, in her opinion, 
he "could be adoptable."

 Where, as here, findings of fact or conclusions of law were not requested and none
were filed, we must presume that every disputed fact issue was found by the trial court in
support of the judgment rendered. Fields v. Texas Emp. Ins. Ass'n, 565 S.W.2d 327, 329
(Tex.Civ.App.--Amarillo 1978, writ ref'd n.r.e.). In the summary of her argument, Colleen
contends there was no evidence or insufficient evidence that (1) Z.J. was placed in a
dangerous situation, (2) Z.J. was placed with persons who were engaging in conduct that
could jeopardize his welfare, and (3) there was no evidence that Z.J. was in danger while
in her care and custody. The evidence, however, presents a history of continuous drug
abuse and addiction, criminal activity by Colleen, and placement of Z.J. in an environment
with a known drug dealer with a criminal record. Contrary to Colleen's argument, the
record contains both direct and circumstantial evidence of a probative nature from which
the factfinder could have formed a firm belief or conviction that the allegations of DFPS
were true. In re J.F.C., 96 S.W.3d at 266. Thus, we conclude the evidence is legally and
factually sufficient to support the trial court's termination order. Moreover, considering that
(1) Z.J.'s father is deceased, (2) his relatives were unable to abide by the service plans,
and (3) Colleen's lifestyle, the evidence is also sufficient to support the trial court's
presumed finding that removal of Z.J. from the environment was in his best interest. 
Colleen's second issue is overruled.

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice


 


 

 

 


 


1. Now referred to as the Department of Family and Protective Services (DFPS).
2. Circumstantial evidence may be used to establish any material fact, but it must
transcend mere suspicion, provided the material fact must be reasonably inferred from the
known circumstances, and circumstantial evidence often involves linking what may be
apparently insignificant and unrelated events to establish a pattern. Lozano v. Lozano, 52
S.W.3d 141, 149 (Tex. 2001).