

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-011-CR

JEFFERY GLENDON MARTIN                                          APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

### FROM THE 97TH DISTRICT COURT OF ARCHER COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Jeffery Glendon Martin was placed on deferred adjudication community supervision after pleading guilty to a charge of possession of a controlled substance. He now appeals from the trial court's revocation of community supervision based on its finding that he had possessed a controlled substance in violation of the terms of his community supervision.

---

[1] *See* Tex. R. App. P. 47.4.

At the hearing on the State's motion to proceed to adjudication, the State called Jimmy Hickey, a narcotics investigator for the North Texas Regional Drug Enforcement Task Force. Hickey testified that on May 23, 2005, members of the Task Force responded to a mobile home fire at 1099 Miller Shores Road in a rural area of Clay County. When Hickey arrived at the scene, Appellant was in the custody of a Clay County deputy. Hickey was shown an open storage shed approximately fifty feet from the fire. He testified that from his vantage point outside the shed, he could see propane tanks that appeared to have valves with a blue-greenish tint, an indication that the tanks had held or had been exposed to anhydrous ammonia, a component used in the manufacture of methamphetamine. He also saw punched and empty starter fluid cans; he testified that starter fluid was a "precursor to the manufacture of methamphetamine."

Based on these observations, Hickey prepared an affidavit in support of a search warrant. After a magistrate arrived on the scene to sign the search warrant, Hickey led a search of the storage shed. Officers found a white bucket inside the shed and an orange cooler under a canopy attached to the shed. Both contained an off-white powder that was later determined by the Texas Department of Public Safety laboratory to be methamphetamine.

The State also called Jane Ham, Archer County District Clerk, who testified that she was present on January 3, 2005, when Appellant entered a plea of guilty to the offense of possession of a controlled substance. By pointing to Appellant, she identified him as the same person who entered the plea of guilty and who was placed on deferred adjudication community supervision.

The State also called Ralph Adams, who testified that he was Appellant's neighbor and that his mobile home was about 150–200 feet from Appellant's mobile home. Adams said that Appellant had occupied the residence for "a year or better" and that during that time Appellant had full access to the home and surrounding buildings. Adams further testified that he had been standing in his yard when he saw the fire start, and he saw Appellant come out of the mobile home after the fire had started. Adams watched Appellant leave in his car and return after a short while.

Appellant's father, Jim Martin, testified that his grandson, Jason Martin, was sometimes on the property where the fire occurred and that he believed Jason to be a person who would steal anhydrous ammonia. Appellant's father stated that he believed his grandson was in custody in Florida and had been for about a year before Appellant's adjudication hearing but also stated that he believed that Jason was in Texas when the fire occurred.

3

In his sole point, Appellant contends that the trial court abused its discretion by revoking his community supervision because the evidence of the methamphetamine possession is legally insufficient to support the trial court's finding that Appellant violated the conditions of his community supervision. Specifically, Appellant argues that the evidence is legally insufficient to show that he actually exercised care, custody, and control over the contraband.[2]

We review an order revoking community supervision under an abuse of discretion standard.[3] In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated the terms and conditions of community supervision.[4] The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling.[5] If the

---

[2] *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).

[3] *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); *Jackson v. State*, 645 S.W.2d 303, 305 (Tex. Crim. App. 1983).

[4] *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993).

[5] *Cardona*, 665 S.W.2d at 493; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981); *Allbright v. State*, 13 S.W.3d 817, 819 (Tex. App.—Fort Worth 2000, pet. ref'd).

4

State fails to meet its burden of proof, the trial court abuses its discretion in revoking the community supervision.[6]

As the Texas Court of Criminal Appeals has held,

[I]n a possession of a controlled substance prosecution, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. Regardless of whether the evidence is direct or circumstantial, [the State] must establish that the defendant's connection with the drug was more than fortuitous. This is the so-called "affirmative links" rule that protects the innocent bystander—a relative, friend, or even stranger to the actual possessor—from conviction merely because of his fortuitous proximity to someone else's drugs. Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs. However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., "links"), may well be sufficient to establish that element beyond a reasonable doubt. It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial.[7]

The trial court heard evidence that Appellant lived on the premises in question when the methamphetamine was discovered and that no one else lived on the property at that time, although Appellant's son may have had access during that time. There was no evidence that anyone else lived on the property. The contraband was in open view in a shed or under the canopy

---

[6] *Cardona*, 665 S.W.2d at 493–94.

[7] *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006) (citations and internal quotations omitted).

attached to the shed, and there was no apparent effort to hide it. In addition to the contraband, the shed also contained evidence of the manufacture of methamphetamine, including anhydrous ammonia storage tanks, lithium strips, punctured ether cans, filters, salt, camp fuel, and starting fluid.

Based on the evidence, we hold that the State sufficiently linked Appellant to the contraband, that the State met its burden of proving by a preponderance of the evidence that he had violated a condition of his community supervision, and that the trial court therefore did not abuse its discretion by revoking his community supervision.[8] We overrule Appellant's sole point and affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 11, 2008

---

[8] *See Evans*, 202 S.W.3d at 161–62; *Cobb*, 851 S.W.2d at 873.

6