ACCEPTED
06-14-00175-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
2/6/2015 3:20:14 PM
DEBBIE AUTREY
CLERK

## NO. 06 – 14– 00175 – CR

IN THE SIXTH DISTRICT COURT OF APPEALS
TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
2/6/2015 3:20:14 PM
DEBBIE AUTREY
Clerk

**CASEY HAMMACK,**
**Appellant,**

**v.**

**THE STATE OF TEXAS,**
**Appellee**

On appeal from the 188th District Court of Gregg County, Texas
Trial Court Case No. 41,514-A

## STATE'S BRIEF

— ORAL ARGUMENT NOT REQUESTED —

**CARL DORROUGH**
Criminal District Attorney
Gregg County, Texas

Zan Colson Brown
Asst. Criminal Dist. Attorney
State Bar No. 03205900
101 E. Methvin St., Suite 333
Longview, TX  75601
Telephone: (903) 236-8440
Facsimile:  (903) 236-8490
Email: zan.brown@co.gregg.tx.us

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. 2

STATEMENT OF FACTS ............................................................................. 4

SUMMARY OF THE ARGUMENT ............................................................... 8

ARGUMENT ................................................................................................. 9

  1.  The judge had sufficient evidence on which to base his findings of a rule violation. ........................................................................................ 9

    a.  Standard of review is abuse of discretion. ......................................... 9

    b.  The State's burden of proof is "preponderance of the evidence."....9

    c.  Hammack's counselor from DEAR testified that Hammack had committed several acts, all of which were rules violations, and after reviewing them cumulatively, the counselors determined that Hammack should be discharged for a violation of cardinal Rule # 2. ...................................................................................10

CONCLUSION AND PRAYER ..................................................................... 12

CERTIFICATE OF SERVICE ....................................................................... 14

CERTIFICATE OF COMPLIANCE ............................................................. 14

# INDEX OF AUTHORITIES

**State Cases**

*Davila v. State*, 547 S.W.2d 606, 609 (Tex. Crim. App. 1977)...............................10

*Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981) .............................10

*Jackson v. State*, 645 S.W.2d 303, 304 (Tex. Crim. App. 1983)...............................9

*Pierce v. State,* 113 S.W.3d 431, 436 (Tex. App.--Texarkana 2003, pet. ref'd).....10

*Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006)................................9

*Scamardo v. State,* 517 S.W.2d 293, 298 (Tex. Crim. App. 1974) ...........................9

**State Rules**

Tex. R. App. Proc, Rule 9 (2014) .........................................................................14

## STATEMENT OF FACTS

Because Appellant Casey Hammack is not challenging anything from the original guilty plea hearing, this appeal is limited to the issue of the trial court's alleged abuse of discretion at the August 25, 2014, hearing on the State's motion to adjudicate Hammack's guilt.[1]

In Case Number 41,514-A, after Casey Hammack pleaded guilty to the underlying drug offense, the court deferred his adjudication on August 6, 2012. CR 18-20. He signed his conditions of community supervision on August 6, 2012. CR 8-9. After a first motion to adjudicate, alleging continued drug use, his conditions of his community supervision were amended April 7, 2014, to add conditions 15-21, all referring to his required treatment at the DEAR Unit, a treatment center for drug offenders. CR 26. Those conditions included number 16, "While in the DEAR Unit, the defendant shall participate in all programs, obey all rules and regulations, follow and successfully complete all recommended treatment programs and remain in the facility until discharged by the Court upon recommendation of the DEAR Unit staff and his supervision officer." CR 26.

The State applied for adjudication again on July 28, 2014, alleging that he violated condition 16 by being discharged from the DEAR Unit on or about the 25th day of June, 2014, for violating Cardinal Rule # 2: no romantic/sexual relationships with peers or staff. CR 31-32.

---

[1] The pertinent parts of this record can be found in a transcript of that hearing, Volume 3 of the Reporter's Record.

The following is a summary of the testimony, at the August 25 adjudication hearing, of the State's only witness, Mike Whitwell, Casey Hammack's counselor at the DEAR Unit:

When asked what rule Mr. Hammack broke that caused his discharge, Whitwell answered, "He engaged in a massage, if you will, with a peer in the peer's room. . . . It is a rule at the facility that clients don't put their hands on other clients. They do not enter other clients' rooms." 3 RR 14. Hammack admitted the massage and his presence in the client's rooms several times. 3 RR 15.

Also, he acknowledged he once had entered the room of another client and had been spanked by his peers in that room. 3 RR 15. Furthermore, he twice admitted sitting on the peer's bed, which is also a violation of rules. 3 RR 16.

The rule Hammack violated is labeled a "cardinal" rule. 3 RR 16. After due deliberation, a team of staff counselors determined that discharge was appropriate. 3 RR 17.

Whitwell, on cross-examination, said he did not personally observe any overt act which led him to believe a romantic/sexual relationship existed. 3 RR 19. He disagreed with defense counsel that there must be an exchange of bodily fluids from the lower part of a person's anatomy for a sexual relationship to be established. *Id*. He further disagreed that "what we have here is many vague

interpretations of what is a romantic/sexual relationship." *Id*. He agreed that an exchange of bodily fluids from the lower part of a person's anatomy would constitute a sex act, but Whitwell denied knowing whether there was a sex act involved in this case. 3 RR 19-20.

Hammack told Whitwell that Hammack was in a peer's room and the peer was lying on the floor, and Hammack massaged his peer on the floor, but was not specific as to which parts of the peer's anatomy he touched. 3 RR 20. Whitwell further acknowledged that he had not seen the spanking incident, either. 3 RR 20. When asked about whether Hammack had consented to the spanking, Whitwell said that Hammack had smiled while talking about it and had indicated that the spanking was ok. 3 RR 21.

Hammack had denied to Whitwell that he was involved in any sexual relationship with anybody. 3 RR 21.

On redirect examination, Whitwell explained the purpose of the rule against romantic/sexual relationships as follows:

> It implies a relationship that is counterproductive to the purpose of the facility. It is termed -- it's termed a negative contract. If I observed someone doing something improper and I don't report it, I establish a relationship with that individual. So should I offend at some later date, I can bring that into account and tell them, "Hey, I did not front you out, you don't front me out."
>
> It compromises the ability of the facility to be effective. It is based on, if you will, cliques, a group of individuals who are not willing to

6

comply with the rules and not willing to hold others accountable for their failure to comply with rules.

Romantic relationships in that setting -- we are a correctional facility. Romantic relationships can be roughly construed as simply an affectionate remark. It's not appropriate, and it compromises the integrity of the [23] facility.

3 RR 22-23.

Whitwell testified that all the offenders were discharged from DEAR, but he did not know what legal consequences they faced after their discharge. 3 RR 23.

The trial court next heard Hammack's lawyer argue for an instructed verdict, because participating in a massage and a spanking do not constitute becoming involved in a romantic/sexual relationship. 3 RR 25.

The State responded by distinguishing between the sexual relationship as described by defense counsel, and Cardinal Rule number 2, which is "no romantic or sexual relationships with peers or staff." Mr. Whitwell described actions that were going to interfere with Hammack's ability to be productive at DEAR and explained that Hammack's actions fell under that cardinal rule. 3 RR 25-26.

The Defense put on one character witness, one of Hammack's former employers, Cindy Holland, who testified that he was a dependable worker and was well-liked. CR 29.

After hearing arguments from each attorney, the trial court found by a preponderance of the evidence based on Hammack's own admission, that

7

Hammack had violated the rules of the DEAR unit by massaging another individual. 3 RR 35.

The judge offered to send him to SAFP, but Hammack rejected that offer. CR 36. The judge sent him to State Jail for six months, with credit for time served. This appeal ensued.

## SUMMARY OF THE ARGUMENT

The Trial Court did not abuse its discretion in revoking the Appellant's deferred-adjudication community supervision. Whitwell's testimony supports the court's findings that Hammack's admitted conduct established a romantic/sexual relationship with a peer, violating the rules of the DEAR unit, and thereby violating his deferred-adjudication community supervision condition # 16, which included obeying all the rules and regulations of DEAR. The State did not have to prove that Hammack engaged in any act of sexual contact involving the exchange of bodily fluids.

**1. The judge had sufficient evidence on which to base his findings of a rule violation.**

    **a. Standard of review is abuse of discretion.**

In Texas, the standard of review for a sufficiency claim on appeal based upon an order revoking community supervision imposed under an order of deferred adjudication is limited to an abuse of the trial court's discretion. *See Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). The trial court's decision is to be "viewed in a light most favorable to the judgment." *Jackson v. State*, 645 S.W.2d 303, 304 (Tex. Crim. App. 1983).

    **b. The State's burden of proof is "preponderance of the evidence."**

At the lower court level, the order granting the State's motion to revoke deferred adjudication must be supported by a preponderance of the evidence. *See Rickels,* 202 S.W.3d 763-764. The burden of proof at the hearing to revoke community supervision falls upon the State. *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974). The State satisfies this burden when "the greater weight of the credible evidence… create[s] a reasonable belief that the defendant has violated a condition of his [community supervision]." *Id.*

It is the trial judge who determines whether the greater weight of credible evidence has created a reasonable belief that the defendant has violated their community supervision as "the trial judge is the sole judge of the credibility of witnesses and the weight to be given their testimony at the hearing to revoke community supervision." *Davila v. State*, 547 S.W.2d 606, 609 (Tex. Crim. App. 1977). The trial judge "may accept or reject any or all of the testimony." *Id.* "It is the trial court's duty to judge the credibility of the witnesses and to determine whether the allegations in the motion to revoke are true or not." *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981). A trial judge is awarded broad discretion at a revocation hearing. *Pierce v. State*, 113 S.W.3d 431, 436 (Tex. App.--Texarkana 2003, pet. ref'd).

c. **Hammack's counselor from DEAR testified that Hammack had committed several acts, all of which were rules violations, and after reviewing them cumulatively, the counselors determined that Hammack should be discharged for a violation of cardinal Rule # 2.**

Per the testimony of Whitwell, Hammack admitted to giving a massage to a peer in the peer's room, where he was not supposed to be. 3 RR 20. He further admitted entering a different peer's room where he apparently willingly submitted to a spanking. 3 RR 14, 15, 21. Touching another peer is a violation. He further admitted to entering a peer's room and twice sitting on the bed. "It is a rule at the facility that clients don't put their hands on other clients. They do not enter other

10

clients' rooms." 3 RR 14. "Casey indicated to me that he did indeed give the client a massage and that he had been in the client's room on several occasions. . . [H]e acknowledged on one occasion being invited into the room. He entered the room and was later spanked by his peers in that room." 3 RR 15. Hammack smiled as he talked about the incident and indicated that he was ok with it. 3 RR 21.

> Whitwell did not act alone in dismissing Hammack; it was a group decision.

> Any behavior by clients that are deemed inappropriate there are rules violations. The treatment team is convened. That includes the entire treatment team, the program manager, the counselor concerned, and other counselors, all have input. The treatment team made a decision that Casey had compromised his ability to actively engage and focus in services, and he was determined that a discharge was appropriate.

3 RR 16-17.

The defense theory was that neither a massage nor a spanking was a sexual act in which bodily fluids were exchanged, and the State had therefore failed to prove its case. Defense counsel's objections to evidence of any act that didn't involve the exchange of bodily fluids indicated that he was attempting to make this case about a sexual act, not a romantic/sexual relationship.

The State's position was that even if there were no evidence of any exchange of bodily fluids, Hammack's several violations cumulatively indicated a romantic/sexual relationship had been established among peers, compromising Hammack's "ability to actively engage and focus in services." 3 RR 17. This met

11

the State's burden, which was to prove by a preponderance of the evidence that Hammack violated the prohibition against romantic/sexual relationships, thus failing to obey all the rules and regulations of DEAR, and thereby failing to comply with condition number 16 of his community supervision.

The trial judge, specifically finding that Hammack had admitted giving a massage to a peer, and finding that conduct to have violated the rules of the DEAR Unit, was well within his discretion to revoke Hammack's community supervision.

## CONCLUSION AND PRAYER

The State had the burden to prove a violation of deferred-adjudication probation conditions by a preponderance of the evidence, and met it. The appellant had the burden to prove an abuse of discretion, and failed. Viewing the evidence in the light most favorable to the judge's ruling, any reasonable fact finder would have found the State met its burden by a preponderance of the evidence. The greater weight of the credible evidence created a reasonable belief that the defendant had violated a condition of his community supervision and should then have been adjudicated.

The judge's ruling was well within the zone of reasonable disagreement. Accordingly, this Court should find that the Appellant is not entitled to relief because the appellant did not prove that the trial court abused its discretion.The State submits that

there is no reversible error in this case, and the Appellant's issue is meritless. The State prays that the revocation and adjudication be affirmed.

Respectfully Submitted,

CARL DORROUGH
Criminal District Attorney
Gregg County, Texas


/s/ *Zan Colson Brown*
Zan Colson Brown
Texas Bar No. 03205900
Assistant Criminal District Attorney
101 E. Methvin St., Suite 333
Longview, TX  75601
Telephone: (903) 236-8440
Facsimile:  (903) 236-8490
Email: zan.brown@co.gregg.tx.us

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing State's Brief was served by electronic transfer, to the honorable Tim Cone, P.O. Box 413, Gilmer, Texas, 75644, at email address: timcone6@aol.com on this the 7th day of February, 2015.

/S/ *Zan Colson Brown*
Zan Colson Brown
Assistant Criminal District Attorney

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing document complies with Texas Rules of Appellate Procedure, Rule 9 (2014) regarding length of documents, in that exclusive of caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix, it consists of 2,062 words.

/s/*Zan Colson Brown*
Zan Colson Brown
Assistant Criminal District Attorney